ORLANDO L. GARCIA, Chief United States District Judge
On this day, the Court considered Defendant's Motion to Dismiss Indictment (docket no. 23) (the "Motion to Dismiss") and the Government's Motion to Reconsider the Court's Order Dismissing the Indictment (docket no. 31) (the "Motion to Reconsider"). After reviewing the motions and each party's original and supplemental briefing, the Court finds that the Government's Motion to Reconsider should be granted and Defendant's Motion to Dismiss should be denied.
BACKGROUND
Defendant Margarito Zapata-Cortinas ("Defendant") has been indicted on a single count of alleged illegal reentry into the United States in violation of 8 U.S.C. § 1326(a). See docket no. 13 (the "Indictment"). Specifically, the Indictment alleges that Defendant-an undocumented immigrant who had "previously been denied admission, excluded, deported, and removed from the United States" - "attempted to enter, entered, and was found in the United States." Id. The Indictment further charges that Defendant had not received consent to reapply for admission to the United States. Id.
Defendant's recent Indictment is premised on Defendant's prior removal from the United States to Mexico in February 2010. In relation to that removal, Defendant was served with a Notice to Appear ("NTA") on January 7, 2010. See docket no. 23-1. Defendant's NTA alleged that he was subject to removal from the United States because (i) he was not a citizen or national of the United States, and (ii) he was present in the United States without being admitted or paroled. Id. Defendant's NTA stated that he was to appear before an immigration judge in San Antonio, Texas "on a date to be set at a time to be set." Id.
The record indicates that following service of the NTA, Defendant was held in detention. See docket no. 26 p. 2. On January 27, 2010, Defendant received a Notice *1011 of Hearing stating that his removal hearing had been scheduled for February 1, 2010. See docket no. 31-2. Defendant remained in detention until his February 1, 2010 removal hearing, and Defendant "attended" his San Antonio removal proceedings via video conference from the Pearsall Detention Facility. See docket nos. 26 pp. 1-2 & 26-1. Following the hearing, Immigration Judge Margaret Burkhart found that Defendant was "subject to removal on the charge(s) in the Notice to Appear." Docket no. 26-1 (the "Removal Order"). As a result, Judge Burkhart ordered that Defendant be removed, and Judge Burkhart's Removal Order indicates that Defendant "waived" his right to appeal. Id. The record indicates that Defendant was removed to Mexico on February 5, 2010. See docket no. 26 pp. 1-2.
The record indicates that on May 3, 2018, Defendant was arrested by officers of Immigration and Customs Enforcement in San Antonio, Texas. See docket no. 1. On May 16, 2018, a Grand Jury returned the pending Indictment charging Defendant with a violation of 8 U.S.C. § 1326(a). See docket no. 13. On August 27, 2018, Defendant filed a Motion to Dismiss his Indictment, relying primarily on the Supreme Court's recent holding in Pereira v. Sessions , --- U.S. ----, 138 S.Ct. 2105, 201 L.Ed.2d 433 (2018). See docket no. 23. Defendant's Motion to Dismiss argues that-in light of Pereira -his prior Removal Order is subject to collateral attack, because the NTA issued as part of his removal proceedings did not comply with the applicable statutory requirements. See ids="12612847" index="9" url="https://cite.case.law/s-ct/138/2105/">id. On September 18, 2018, the Government filed a response in opposition to Defendant's motion (docket no. 26), and on September 25, 2018, Defendant filed a reply brief in support of his motion (docket no. 27).
On October 2, 2018, this Court entered an Order dismissing Defendant's Indictment. See docket no. 28 (the "Prior Order"). Following entry of the Court's Prior Order, the Government filed its Motion to Reconsider the Court's dismissal of the Indictment. See docket no. 31. On October 15, 2018, Defendant filed a response to the Government's motion. See docket no. 35. In light of the split of authority that was developing among district courts as to Pereira's application in the context of § 1326(a) prosecutions, the Court vacated the Prior Order and requested supplemental briefing from each party on certain specific issues.[1] See docket no. 36. Pursuant *1012 to the Court's request, Defendant and the Government have each submitted supplemental briefing on the relevant issues. See docket nos. 40 & 42.
DISCUSSION
Defendant seeks dismissal of his Indictment under § 1326(a). Defendant argues that the immigration court was never vested with jurisdiction because the Notice to Appear he received was deficient under the applicable statutes and regulations. See docket nos. 23, 27 & 42. Accordingly, Defendant asserts that he has a due process right to challenge the prior Removal Order. See docket no. 23.
After reviewing Defendant's Motion to Dismiss, the Government's Motion to Reconsider, and the parties' original and supplemental briefing, this Court finds that Defendant's Indictment should not be dismissed. Although the Court concludes that Defendant's NTA was deficient, the Court also concludes that Defendant must satisfy the requirements of § 1326(d) to collaterally attack his underlying Removal Order. In this case, Defendant has not done so.
I. A Notice to Appear for Removal Proceedings Must Contain the Date and Time of the Removal Hearing
Title 8 U.S.C. § 1229a directs immigration judges to conduct proceedings for deciding the inadmissibility or deportability of an alien in the United States. See 8 U.S.C. § 1229a(a)(1)-(3) (directing that "immigration judge[s] shall conduct proceedings for deciding the inadmissibility or deportability of an alien" and stating that unless otherwise specified "a proceeding under this section shall be the sole and exclusive procedure for determining whether an alien may be admitted to the United States or, if the alien has been so admitted, removed from the United States"). The requirements for jurisdiction in the immigration court are set forth in regulations promulgated by the Attorney General pursuant to authority delegated to him by statute. See 8 U.S.C. § 1103(g)(2) (providing that the Attorney General "shall establish such regulations ... as the Attorney General determines to be necessary for carrying out this section"). Under the regulations that have been promulgated, jurisdiction vests and proceedings commence before an immigration court when a charging document is filed with the immigration court. 8 C.F.R. § 1003.14(a). The phrase "charging document" refers to a "written instrument which initiates a proceeding before an Immigration Judge ... includ[ing] a Notice to Appear." 8 C.F.R. § 1003.13.
Title 8 U.S.C. § 1229(a)(1) sets out the requirements for any "Notice to Appear" for proceedings held pursuant to § 1229a, and in relevant part, it states as follows:
In removal proceedings under section 1229a of this title, written notice (in this section referred to as a "notice to appear") shall be given in person to the alien (or, if personal service is not practicable, through service by mail to the alien or to the alien's counsel of record, if any) specifying the following:
(A) The nature of the proceedings against the alien.
*1013 (B) The legal authority under which the proceedings are conducted.
(C) The acts or conduct alleged to be in violation of law.
(D) The charges against the alien and the statutory provisions alleged to have been violated.
(E) The alien may be represented by counsel and the alien will be provided (i) a period of time to secure counsel under subsection (b)(1) of this section and (ii) a current list of counsel prepared under subsection (b)(2) of this section.
(F)(i) The requirement that the alien must immediately provide (or have provided) the Attorney General with a written record of an address and telephone number (if any) at which the alien may be contacted respecting proceedings under section 1229a of this title.
(ii) The requirement that the alien must provide the Attorney General immediately with a written record of any change of the alien's address or telephone number.
(iii) The consequences under section 1229a(b)(5) of this title of failure to provide address and telephone information pursuant to this subparagraph.
(G)(i) The time and place at which the proceedings will be held.
(ii) The consequences under section 1229a(b)(5) of this title of the failure, except under exceptional circumstances, to appear at such proceedings.
8 U.S.C. § 1229(a)(1) (boldface added).
Because removal proceedings in the immigration court fall under the purview of § 1229a, the plain language of the statute appears to require that NTAs issued for those proceedings contain the time and place of the removal hearing. In Pereira v. Sessions, --- U.S. ----, 138 S.Ct. 2105, 2113-14, 201 L.Ed.2d 433 (2018), the Supreme Court recently examined § 1229(a) and its NTA requirements in the context of an immigration mechanism known as the "stop-time rule."[2] Specifically, after conducting an analysis of the relevant statutes and regulations, the Pereira Court held that "[a] notice that does not inform a noncitizen when and where to appear for removal proceedings is not a notice to appear under section 1229(a)." Id.
As a result, the plain reading of § 1229(a) and Pereira clearly demonstrate that an NTA that fails to include the time or place of the removal hearing is deficient under the statute, and this Court agrees with the other courts that have arrived at that conclusion in light of Pereira . See, e.g., United States v. Virgen-Ponce , 320 F.Supp.3d 1164 (E.D. Wash. 2018) ; United States v. Lopez-Urgel , No. 1:18-CR-310-RP, 351 F.Supp.3d 978, 2018 WL 5984845 (W.D. Tex. Nov. 14, 2018) ; United States v. Alfredo Valladares , No. 1:17-CR-156-SS, docket no. 44, 2018 WL 6629653 (W.D. Tex. Oct. 30, 2018) ; United States v. Pedroza-Rocha , No. EP-18-CR-1286-DB, docket no. 53, 2018 WL 6629649 (W.D. Tex. Sept. 21, 2018) ; United States v. Cruz-Jimenez , No. A-17-CR-00063, 2018 WL 5779491 (W.D. Tex. Nov. 2, 2018). Importantly, even several courts that have ultimately denied dismissal of defendants' § 1326 indictments-on other bases-have seemingly agreed that Pereira requires *1014 that NTAs issued for removal proceedings contain the date and time of an alien's hearing. See, e.g., United States v. Santos Larios-Ajualat , No. 18-10076-JWB, 2018 WL 5013522, at *4 (D. Kan. Oct. 15, 2018) (stating that "Defendant's notice to appear was clearly defective under Pereira , as it did not include a specific date and time to appear," but ultimately concluding that the indictment was not subject to dismissal); United States v. Lira-Ramirez , No. 18-10102-JWB, 2018 WL 5013523, at *4 (D. Kan. Oct. 15, 2018) (same); United States v. Mendoza-Sanchez , No. 17-cr-189-JD, 2018 WL 5816346, at *2 (D.N.H. Nov. 5, 2018) (noting that the NTA served on the alien "was deficient under Pereira because it did not contain the time and date of the removal hearing," but ultimately concluding that alien's collateral attack on the removal order in the subsequent § 1326 proceeding should be denied).
In an attempt to avoid the result that one must reach by relying on the plain reading of the statute and the Supreme Court's Pereira opinion, the Government offers a few arguments, which the Court will address in turn.
First, the Government contends that an NTA may be a valid charging document without including the time and place of the removal proceedings because the applicable regulation promulgated by the Attorney General does not require that NTAs include this information. See docket no. 31 pp. 3-8. As discussed above, the statute requires that a notice to appear include numerous types of information, including the time and place of the removal hearing. See 8 U.S.C. § 1229(a). Under the regulatory definition, however, a notice to appear must include all of the information required by § 1229(a), except for the time and place of the removal hearing. See 8 C.F.R. § 1003.15. On that basis, the Government asserts that the regulatory requirements should control, and therefore, a notice to appear need not include time and place information to be a valid charging document for proceedings held pursuant to § 1229a. See docket no. 31 pp. 5-7.
The Government's contention is based on an incomplete reading of both Pereira and the applicable regulations. As an initial matter, the Government's reading of the regulations appears to ignore 8 C.F.R. § 1003.18, which states that immigration authorities "shall provide in the Notice to Appear, the time, place and date of the initial removal hearing, where practicable." This language likely explains why time and place information is not listed in the requirements for NTAs under 8 C.F.R. § 1003.15, as both the regulations and the statute appear to be describing the same document .[3]
More importantly, however, the Pereira decision seemingly eliminated the apparent loophole created by 8 C.F.R. § 1003.18 that permitted immigration authorities to disregard the explicit statutory requirements for NTAs whenever they determined doing so would be "impracticable." The Pereira opinion recognized that DHS had deemed it "impracticable" to include time and place information in "almost 100 percent" of NTAs over the prior three *1015 years-and notwithstanding the fact that the Board of Immigration Appeals (BIA) had previously concluded that the omission of time and place information was permissible and in accordance with Department of Homeland Security (DHS) regulations-the Supreme Court held that an NTA must designate the specific time and place of the removal proceedings to be an NTA under § 1229(a). Pereira , 138 S.Ct. at 2111-14. Specifically, "the Supreme Court noted [ 8 C.F.R. § 1003.18 ], weighed the Government's concern that including the date and time may be frequently im practicable, and concluded that these practical considerations are meritless and do not justify departing from the statute's clear text." Lopez-Urgel , 351 F.Supp.3d at 987, 2018 WL 5984845, at *4 (emphasis in original) (internal citations and quotations omitted).
Similarly, the Government's reliance on the requirements for a "Notice to Appear" under 8 C.F.R. § 1003.15 is undermined by the fact that the regulation conflicts with the express intention of Congress. Where a regulation "is inconsistent with the statutory language" or is "an unreasonable implementation of it," the regulation "will not control" over the statute. United States v. Haggar Apparel Co. , 526 U.S. 380, 392, 119 S.Ct. 1392, 143 L.Ed.2d 480 (1999) ; see also Chevron v. Nat. Res. Def. Council, Inc. , 467 U.S. 837, 842-43, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984) ("If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress."). Here, the applicable regulation is inconsistent with the statute, which states that the "Notice to Appear" to be used in the "[i]nitiation of removal proceedings" should include time and place information. See 8 U.S.C. § 1229(a). Thus, "if Congress clearly and unambiguously intended for notices to appear to always include time-and-place information, the regulations may not give effect to a notice to appear that fails to include this information." Cruz-Jimenez , 2018 WL 5779491, at *5. It would also be "illogical to suppose that a regulation requiring a notice to appear to include time-and-place information 'where practicable' is contrary to Congressional intent," as the Pereira Court concluded, "while a regulation that would never require notices to appear to include this information is not." Cruz-Jimenez , 2018 WL 5779491, at *6. In sum, the relevant regulation is inconsistent with-or is an unreasonable implementation of-the plain statutory text. Thus, the statutory requirements for a "Notice to Appear" for proceedings held pursuant to § 1229a must control over the regulatory definition.
Next, the Government asserts that the Pereira opinion should be viewed "narrowly" and should not be extended beyond application to the "stop-time rule." Docket no. 26 pp. 2-3. The Government directs the Court to a portion of the Pereira opinion in which the Supreme Court stated that "[a] notice that does not inform a noncitizen when and where to appear for removal proceedings is not a 'notice to appear under section 1229(a) ' and therefore does not trigger the stop-time rule." Id. (quoting Pereira , 138 S.Ct. at 2110, 2113 ). Based on that language, the Government states that " Pereira is distinguishable" because "the 'stop-time' rule is not at issue" in this case. Docket no. 26 pp. 3-4.
In the Court's view, the Government's reading of Pereira places too much emphasis on the clause following the coordinating conjunction "and." See Pedroza-Rocha , No. EP-18-cr-1286-DB, docket no. 53 p. 7. The first portion of the sentence cited by the Government appears to describe the Supreme Court's conclusion with respect to the requirements for an NTA under § 1229(a). The second portion of the sentence-on which the Government's position *1016 is based-appears to describe the application of the Supreme Court's conclusion, as opposed to a limitation on that conclusion. "Put another way, the Supreme Court stated that a notice to appear is invalid without designating the time and place and it was on this basis that the stop-time rule was not triggered." Ortiz , 347 F.Supp.3d at 407, 2018 WL 6012390, at *3 (emphasis added). This interpretation is reinforced by the fact that the Pereira opinion also discusses the majority's general conclusion regarding the Notice to Appear in a separate context, outside the narrow scope of the "stop-time rule." See id. at 2114-15 (discussing the need for the NTA to contain time and place information to give practical effect to § 1229(b)(1), which mandates that a hearing cannot be scheduled until at least 10 days after service of the NTA so that an alien has "the opportunity to secure counsel").
Moreover, it would be incongruous to interpret the plain language of § 1229(a)(1) differently depending on the Government's stated purpose, and there is no reason to construe "Notice to Appear" differently for the purposes of the "[i]nitiation of removal proceedings"-notably, the title of § 1229 -than when applying it in the "stop-time" context. See Clark v. Martinez , 543 U.S. 371, 378, 125 S.Ct. 716, 160 L.Ed.2d 734 (2005) ("To give the[ ] same words a different meaning for each category [under the statute] would be to invent a statute rather than interpret one."). Indeed, the majority opinion in Pereira indicates that the "stop-time rule" was just one context in which the time and place requirements must be satisfied with respect to an NTA. See Pereira , 138 S.Ct. at 2116 ("[W]hen the term 'notice to appear' is used elsewhere in the statutory section, including as the trigger for the stop-time rule , it carries with it the substantive time-and-place criteria required by § 1229(a).") (emphasis added). Accordingly, the Court concludes that it would be inappropriate to limit Pereira 's conclusion regarding § 1229(a)'s NTA requirements only to immigration proceedings involving the "stop-time rule," given that the plain language indicates it is meant to apply to the initiation of all § 1229a proceedings.[4]
Finally, the Government argues that Pereira should be distinguished from this case because Defendant received actual notice of the date and time of his hearing and thus was able to attend the removal proceedings.[5] See docket no. 26 p. 4; docket no. 31 p. 13. Although this distinction might be relevant as to the determination of any "actual prejudice" suffered by Defendant, see Section III and note 18, *1017 infra , the fact that Defendant received actual notice does not make the legal holding of Pereira inapplicable in this case. The Government's argument appears to be premised on the idea that an incomplete NTA can be cured if the alien does in fact receive notice of the time and date of the removal hearing in a subsequent Notice of Hearing. See docket no. 31 pp. 13-14. However, the Government made similar arguments during the Pereira proceedings. See Br. for Resp't, Pereira v. Sessions , No. 17-459, 2018 WL 1557067, at 29-30, 49 (Mar. 23, 2018). Instead of adopting the Government's position, the Supreme Court appears to have rejected the argument by holding that a putative "Notice to Appear" lacking the hearing date and time is not merely an "incomplete" NTA, but it is instead not an NTA at all. See Pereira , 138 S.Ct. at 2113-14, 2116-17 ("Section § 1229(a) does not say a 'notice to appear' is complete when it specifies the time and place of the removal proceedings. Rather, it defines a 'notice to appear' as a 'written notice' that 'specifies,' at a minimum the time and place of the removal proceedings."). An invalid NTA does not become a valid NTA when a notice of hearing is served, and the Government's position to the contrary is not supported by the language of the statute.[6]
Here, the Court must rely upon the plain language of the statute as well as the relevant Supreme Court precedent from Pereira. The statute clearly states that an NTA must contain the time and place of the hearing, and an NTA that lacks such information "is not a notice to appear under section 1229(a)." Pereira , 138 S.Ct. at 2110, 2113. For that reason, this Court agrees with the other courts that have concluded that-in light of Pereira -a Notice to Appear for a removal proceeding must contain the removal hearing's time and place. See, e.g., Virgen-Ponce , 320 F.Supp.3d 1164 ; Lopez-Urgel , 351 F.Supp.3d 978, 2018 WL 5984845 ; Cruz-Jimenez , 2018 WL 5779491 ; Ortiz , 347 F.Supp.3d 402, 2018 WL 6012390 ; Santos Larios-Ajualat , 2018 WL 5013522 ; Lira-Ramirez , 2018 WL 5013523 ; Mendoza-Sanchez , 2018 WL 5816346. Accordingly, the Court concludes that the NTA provided to Defendant prior to his 2010 removal was deficient and invalid.
II. Notwithstanding the Invalid Notice to Appear for His Prior Removal Proceeding, Defendant Must Satisfy Requirements of § 1326(d)
Now that the Court has concluded that the NTA served on Defendant did not *1018 satisfy § 1229(a)'s requirements, the Court must next address how-if at all-Defendant's prior receipt of an invalid NTA affects his pending indictment under 8 U.S.C. § 1326(a).
The Government contends that Defendant must satisfy the requirements of 8 U.S.C. § 1326(d) in order to challenge the validity of his prior Removal Order. See docket no. 42 pp. 1-3. Specifically, § 1326(d) states that in order for an alien to collaterally attack a prior removal order during a § 1326(a) prosecution, the alien must demonstrate that:
(1) the alien exhausted any administrative remedies that may have been available to seek relief against the order;
(2) the deportation proceedings at which the order was issued improperly deprived the alien of the opportunity for judicial review; and
(3) the entry of the order was fundamentally unfair.
8 U.S.C. § 1326(d). Thus, according to the Government, the plain language of the statute means that-even if Defendant's prior Removal Order may have been invalid due to the deficient NTA-Defendant may only challenge the validity of the prior Removal Order at this stage if he can satisfy the high bar set forth in § 1326(d). See docket no. 42 pp. 1-3. The Government's position is supported by recent case law, as many of the courts that have addressed the issue in the period following Pereira have arrived at the conclusion that § 1326(d) must still be satisfied. See, e.g., Lopez-Urgel , 351 F.Supp.3d 978, 2018 WL 5984845 ; Santos Larios-Ajualat , 2018 WL 5013522 ; Lira-Ramirez , 2018 WL 5013523 ; Mendoza-Sanchez , 2018 WL 5816346 ; Ibarra-Rodriguez , 2018 WL 4608503 ; United States v. Romero-Colindres , No. 1:18-cr-00415, 2018 WL 5084877 (N.D. Ohio Oct. 18, 2018).
Defendant, on the other hand, contends that the requirements of § 1326(d) need not be satisfied because the invalid NTA rendered the prior Removal Order void for lack of jurisdiction. See docket nos. 35 p. 3 & 40 p. 1. The position finds support in the regulations governing removal proceedings in the immigration court, which make clear that jurisdiction does not vest with the immigration court until a "charging document" is filed. 8 C.F.R. § 1003.14(a). Thus, according to Defendant, jurisdiction did not vest in the immigration court because no valid charging document was filed in this case. 8 C.F.R. § 1003.14(a) ; DeLeon-Holguin v. Ashcroft , 253 F.3d 811, 815 (5th Cir. 2001) ("[R]emoval proceedings commence when the [Department of Homeland Security] files the appropriate charging document with the immigration court."). Because orders exceeding a court's jurisdiction may be void, Defendant contends that § 1326(d) need not necessarily be satisfied in order to collaterally attack the prior Removal Order. See docket no. 40 p. 9; see also Matter of Reitnauer , 152 F.3d 341, 344 n.12 (5th Cir. 1998) ("It is true that (1) jurisdictional defects render a judgment void, and (2) void judgments are subject to collateral attack."); Puc-Ruiz v. Holder , 629 F.3d 771, 782 (8th Cir. 2010) ("When the [immigration judge] lacks jurisdiction, [the judge's] decisions are nullities."). Multiple district courts (including at least two in this District) have adopted this line of reasoning in the period since Pereira , and those courts have exempted defendants from satisfying § 1326(d)'s requirements because "an element of illegal reentry under § 1326" is not satisfied when the underlying removal order is void.[7]
*1019 Alfredo Valladares , No. 1:17-CR-156-SS, docket no. 44 p. 17 ; Pedroza-Rocha , No. EP-18-CR-1286-DB, docket no. 53 p. 9 (quoting 8 U.S.C. § 1326(a)(1) ) (holding that a "void removal means [defendant] was not 'removed' as a matter of law" and "the Government cannot satisfy the plain language of § 1326, which applies only to noncitizens who reenter the United States after having been 'denied admission, excluded, deported, or removed.' "); Ortiz , 347 F.Supp.3d at 407, 2018 WL 6012390, at *3-4 (holding that the Government cannot prove the "removal" element of the offense and stating that "[d]efendant need not satisfy section 1326(d)'s strict requirements because the Immigration Judge lacked jurisdiction from the outset.").
Having considered both lines of arguments and the numerous decisions that have come out in the period since Pereira , the Court concludes that (i) a removal order that suffers jurisdictional defects may serve as the basis for a § 1326(a) prosecution, and (ii) a § 1326 defendant must satisfy the requirements of § 1326(d) in order to collaterally attack the underlying removal order.
By enumerating the specific requirements that must be satisfied in order for a defendant to collaterally attack a prior removal order, § 1326(d) necessarily contemplates that flawed or invalid removal proceedings may still serve as the basis of a "prior removal" in a § 1326(a) prosecution if the requirements are not met. Indeed, in United States v. Mendoza-Lopez , the Supreme Court noted that the language chosen by Congress when drafting § 1326 does not limit § 1326(a) prosecutions only to those cases in which the underlying removal was "lawful."[8] 481 U.S. 828, 834-35, 107 S.Ct. 2148, 95 L.Ed.2d 772 (1987). Instead, the Supreme Court held that the constitutional requirement of due process requires that, "at the very least, where the defects in an administrative proceeding foreclose judicial review of that proceeding, an alternative means of obtaining judicial review must be made available before the administrative order may be used to establish conclusively an element of a criminal offense." Id. at 838, 107 S.Ct. 2148.
In light of the Mendoza-Lopez decision, and given that the original text of § 1326"indicate[d] no Congressional intent to sanction challenges to deportation orders in proceedings under § 1326," Mendoza-Lopez , 481 U.S. at 837, 107 S.Ct. 2148, Congress amended § 1326 to add § 1326(d). In other words, § 1326(d) was Congress's attempt to comply the Supreme Court's directive that § 1326 defendants be afforded an opportunity for "some meaningful review of the administrative proceeding" before it is used as a basis for their criminal convictions. See id. at 837-38, 107 S.Ct. 2148 ; see also United States v. Benitez-Villafuerte , 186 F.3d 651, 658 n.8 (5th Cir. 1999) (noting that § 1326(d) essentially codified the holding of Mendoza-Lopez ). For that reason, the legislative history and plain language of § 1326(d) indicate that "unlawful" removal orders may serve as an underlying element of § 1326(a) prosecutions so long as the defendant has had an opportunity for administrative and judicial review of any errors. See also United States v. Earle , 488 F.3d 537, 547 (1st Cir. 2007) ("[T]he lawfulness of a prior deportation is not an element of § 1326 and the government has no burden to prove it.");
*1020 United States v. Paredes-Batista , 140 F.3d 367, 376 (2d Cir. 1998) (" Section 1326 does not, on its face, require that the earlier deportation have been "lawful" to support a conviction for illegal reentry.").
Moreover, the Court believes this same rule applies even when the "invalidity" or "unlawful" nature of the removal order is based on a jurisdictional defect. As an initial matter, there is no indication that Congress or the Mendoza-Lopez Court intended to treat jurisdictional defects differently than any other type of "unlawful" or invalid removal order. Indeed, the Court has found at least one case in which the Fifth Circuit has affirmed a defendant's § 1326 conviction notwithstanding the fact that his underlying removal order was issued by the BIA , which "does not have the authority to order the removal of an alien in the first instance."[9] United States v. Castelan-Jaimes , 575 Fed. App'x 253, 254 (5th Cir. 2014) (per curiam) (unpublished decision).
Certain of the recent post- Pereira decisions have held that the requirements of § 1326(d) cannot bar collateral attacks based on the immigration court's lack of subject-matter jurisdiction because subject-matter jurisdiction cannot be "waived."[10] See Pedroza-Rocha , No. EP-18-cr-1286-DB, docket no. 53 p. 9 ("[S]ubject matter jurisdiction cannot be waived and the immigration court's lack of this jurisdiction justifies dismissing the indictment."); Alfredo-Valladares , No. 17-CR-00156-SS, docket no. 44 p. 4 ("[Defendant] may ... collaterally attack the judgment as being void for lack of jurisdiction notwithstanding the fact that such grounds are absent from § 1326(d)."). However, although it is true that want of jurisdiction is generally not waivable during the underlying proceedings and immediate appeal, see In re Edwards , 962 F.2d 641, 644 (7th Cir. 1992), the Supreme Court has made clear that challenges to subject-matter jurisdiction may be waived for the purposes of a subsequent collateral attack. See Chicot Cty. Drainage Dist. v. Baxter State Bank , 308 U.S. 371, 378-79, 60 S.Ct. 317, 84 L.Ed. 329 (1940). Unsurprisingly, the Fifth Circuit *1021 has applied the doctrine in numerous cases. See, e.g., Picco v. Global Marine Drilling Co. , 900 F.2d 846, 850 (5th Cir. 1990) ("A court's determination of its own jurisdiction is subject to the principles of res judicata ; it generally may not be challenged in a collateral proceeding."); U.S. v. Hansard , No. 07-30090, 2007 WL 2141950, *1 (5th Cir. 2007) (per curiam) (unpublished decision) ("Rule 60(b)(4) relief, however, is not available .... A district court's exercise of subject matter jurisdiction, even if erroneous, is res judicata and is not subject to collateral attack through Rule 60(b)(4) if the party seeking to void the judgment had the opportunity previously to challenge jurisdiction and failed to do so."); Royal Ins. Co. of Am. v. Quinn-L Capital Corp. , 960 F.2d 1286, 1293 (5th Cir. 1992) ("If the parties against whom judgment was rendered did not appeal, the judgment becomes final and the court's subject matter jurisdiction is insulated from collateral attack"). An exception to this rule is made only where there is "a clear usurpation of power or total want of jurisdiction."[11] Winograd v. Fowler , No. 98-20660, 1999 WL 499565 at *2 (5th Cir. 1999) (per curiam) (unpublished decision).
Accordingly, there is no constitutional, statutory or judicial doctrine that mandates that all collateral attacks on subject-matter jurisdiction must be entertained, and in fact, the express statutory language of § 1326(d) limits the exact scope of collateral attacks that are permissible. See Lira-Ramirez , 2018 WL 5013523 at *7 ("Congress made clear by adopting § 1326(d) that knowingly giving up the opportunity for judicial review in a removal proceeding precludes an alien from challenging the validity of the removal order in a§ 1326 prosecution."). Notably, in Castelan-Jaimes , the Fifth Circuit affirmed a district court decision that had determined that a jurisdictional defect in the removal proceedings rendered the decision "voidable but not void." 575 Fed. App'x at 254. Because the defendant in Castelan-Jaimes had not challenged the BIA's non-authorized issuance of his removal order on direct appeal,[12] both the district court and the Fifth Circuit held that the defendant had not satisfied the requirements of § 1326(d) and his indictment should not be dismissed. Id ; United States v. Castelan-Jaimes , No. A-13-CR-111-SS, docket no. 27 p. 4 (W.D. Tex. May 13, 2013) ("[T]he BIA's removal order appears to the Court to have been voidable, not void, and it was incumbent upon [defendant] to appeal to the Fifth Circuit.").
The Court believes the present circumstances closely parallel those found in Castelan-Jaimes. Here, Defendant received a deficient NTA, and thus, it appears the immigration judge issued a removal order that was outside of her authority and for which there was no formal, vested jurisdiction. However, prior to Pereira , the immigration judge certainly had an "arguable basis" for believing she had jurisdiction over Defendant's removal proceedings, and there was no "clear usurpation of power" in issuing the underlying Removal Order. Thus, the legislative history and plain language of § 1326 and relevant Fifth Circuit precedent demonstrate that Defendant is not automatically permitted to collaterally attack his Removal Order for want of jurisdiction.
*1022 Instead, Defendant may only collaterally attack his Removal Order if he can satisfy the elements of § 1326(d). As discussed below, Defendant cannot do so in this case.
III. Defendant Has Not Satisfied the Requirements of § 1326(d) in this Case
As set forth above, 8 U.S.C. § 1326(d) states that an alien wishing to collaterally attack a prior removal order must demonstrate that (1) the alien exhausted any administrative remedies that may have been available to seek relief against the order; (2) the deportation proceedings at which the order was issued improperly deprived the alien of the opportunity for judicial review; and (3) the entry of the order was fundamentally unfair. Finally, the Fifth Circuit has also held that in the event an alien demonstrates "fundamental unfairness," the alien must also demonstrate that such fundamental unfairness caused the alien "actual prejudice."[13] Benitez-Villafuerte , 186 F.3d at 658. However, there is at least some question as to whether a proceeding may be so fundamentally unfair that a showing of "actual prejudice" may not be required to satisfy § 1326(d). See id. at 659 (citing Mendoza-Lopez , 481 U.S. at 839 n.17, 107 S.Ct. 2148 ); Lopez-Urgel , 351 F.Supp.3d at 990-92, 2018 WL 5984845, at *7-8.
The alien must prove all of the statutory requirements in order to successfully challenge the validity of the underlying deportation order. United States v. Cordova-Soto , 804 F.3d 714, 724 (5th Cir. 2015). If the alien fails to establish any one element of § 1326(d), the Court need not consider the others. See id. In other words, even if the Defendant demonstrates that his removal proceedings were fundamentally unfair because they were conducted in a tribunal that lacked jurisdiction, Defendant must-at minimum-also demonstrate that (i) he exhausted all administrative remedies, and (ii) the removal proceedings deprived him of the opportunity for judicial review.
Following a review of the record, the Court concludes that Defendant cannot satisfy § 1326(d)'s requirements, and specifically, the analysis can start and end with an analysis of §§ 1326(d)(1) and 1326(d)(2).[14] The relevant question with respect to the § 1326(d)(2) analysis is whether the deportation proceedings "deprived" the defendant of the "opportunity for judicial review" to challenge the defects with his proceeding. The fact that a defendant chooses "not to make the attempt" to gain access to the courts and challenge the flaws with his underlying removal "does not mean that he was deprived of all avenues of judicial review of his removal order." United States v. Roque-Espinoza , 338 F.3d 724, 729-30 (7th Cir. 2003). To the contrary, "a valid waiver of the right to appeal a deportation order precludes a later collateral attack." United States v. Garza-Sanchez , 217 F.3d 806, 808 (9th Cir. 2000) ; see also United States v. Cerna , 603 F.3d 32, 38 (2d Cir. 2010) (holding that *1023 "knowing and voluntary" waiver of appeal rights will "bar collateral attack on the [deportation] order in a subsequent illegal reentry prosecution").
Notwithstanding the fact that Defendant's NTA did not contain the time and date of his proceedings, it appears Defendant ultimately received notice of his hearing and appeared-via video conference-at the removal hearing.[15] See docket no. 31-2. The record also indicates that Defendant was advised that he had the "right to appeal an adverse decision by the immigration judge,"see docket no. 31-1 p. 2, and it appears that Defendant voluntarily waived that right during his removal proceeding.[16] See docket no. 31-3. To the extent Defendant wished to assert that his Notice to Appear was defective or that the immigration judge was operating without jurisdiction, the record makes clear that Defendant had the opportunity for judicial and/or administrative review. However, the fact that Defendant ultimately chose not to appeal the immigration judge's removal order does not "mean that he was deprived of all avenues of judicial review of his removal order." Roque-Espinoza , 338 F.3d at 729-30. Thus, Defendant cannot make the showing necessary to satisfy his burden under § 1326(d)(2). Further, the exact same evidence also supports the conclusion that Defendant waived his rights to administrative review, rather than exhausting his administrative remedies as is required under § 1326(d)(1).
As a final argument, Defendant asserts that his non-compliance with the "exhaustion and judicial review [requirements]" should be excused because administrative and judicial review "would have been futile." See docket no. 40 p. 11. There is limited precedent for waiving the exhaustion of administrative remedies when such remedies would be "inadequate," and "[t]he best founded [circumstance] ... [occurs] where resort to the agency would be futile because the challenge is one that the *1024 agency has no power to resolve in the applicant's favor." See Goonsuwan v. Ashcroft , 252 F.3d 383 (5th Cir. 2001) (quoting Sousa v. I.N.S. , 226 F.3d 28 (1st Cir. 2000) ); see also United States v. Copeland , 376 F.3d 61, 67 (2d Cir. 2004) (noting exception to exhaustion requirements where "the relevant administrative procedure lacks authority to provide any relief or to take action whatsoever in response to a complaint"). Thus, in support of his "futility" argument, Defendant notes-and the Court fully recognizes-that the procedure DHS utilized for Defendant's NTA (i.e. , supplementing a statutorily-deficient NTA with a Notice of Hearing that contained time and date information) had been approved by both the Fifth Circuit and the BIA prior to Pereira . See Gomez-Palacios v. Holder , 560 F.3d 354, 359 (5th Cir. 2009) ("[A]n NTA need not include the specific time and date of a removal hearing in order for the statutory notice requirements to be satisfied; that information may be provided in a subsequent [notice of hearing].").[17]
The Court finds the present circumstances to be distinguishable from the circumstances under which exceptions to the exhaustion requirements are appropriate. As an initial matter, there is no indication that the BIA (or the Fifth Circuit) would have lacked the power or authority to declare Defendant's NTA deficient under the statute or the Removal Order invalid. Instead, it is well within an appellate body's power to declare orders void if the underlying tribunal lacked jurisdiction. See Diaz v. Sessions , 894 F.3d 222, 226 (5th Cir. 2018) ("We generally have jurisdiction to review orders of removal ...."); Brumfield v. La. State Bd. of Educ. , 806 F.3d 289 (5th Cir. 2015) (reversing and dissolving district court injunction that was void for lack of subject matter jurisdiction).
Moreover, and notwithstanding the BLA's and Fifth Circuit's prior precedent, "the law would never change if litigants did not request the responsible tribunals to reconsider earlier rulings." Roque-Espinoza , 338 F.3d at 728-29. Indeed, in the administrative review context, the Supreme Court has noted that the "repetition of [an] objection ... might lead to a change of policy" or, if not, put an agency "on notice of the accumulating risk of wholesale reversals being incurred by its persistence." United States v. L.A. Tucker Truck Lines, Inc. , 344 U.S. 33, 37, 73 S.Ct. 67, 97 L.Ed. 54 (1952) ; see also Sousa , 226 F.3d at 32 ("The Supreme Court has said that merely because the [BIA] has previously rejected an argument is no basis for failing to make the claim in one's own case.").
Most importantly, Congress specifically enumerated the exhaustion requirements in § 1326(d), and the Court does not have the general authority to excuse the requirements based on equitable arguments. United States v. Gonzalez-Roque , 301 F.3d 39, 47 (2d Cir. 2002) (internal quotation marks omitted) ("Statutory exhaustion requirements such as that set forth in § 1326(d) are mandatory, and courts are not free to dispense with them."); cf. United Farm Workers of Am., AFL-CIO v. Ariz. Agr. Employ. Relations Bd. , 669 F.2d 1249, 1253 (9th Cir. 1982) (noting that exhaustion doctrines may be in the Court's discretion "[u]nless it is specifically required by statute"). On that basis, at least one district court has explicitly declined to "craft an equitable futility *1025 exception to § 1326(d)(1)'s administrative exhaustion requirement." United States v. Mejia , No. 1:15-cr-361, 2016 WL 743400, at *5 (E.D. Va. Feb. 23, 2016). Although the Court understands that it was unlikely that BIA or judicial review would have resulted in a ruling in Defendant's favor prior to Pereira , that alone is not a basis for excusing compliance with § 1326(d)'s express requirements. See United States v. Larios-Buentello , 807 F.3d 176, 177-78 (7th Cir. 2015) (rejecting futility argument with respect to § 1326(d) and noting that "[a] litigant's unilateral belief that an appeal would fail does not make the opportunity 'unavailable' or excuse failure to use the procedure.").
Accordingly, Defendant's futility argument must be rejected, and the Court finds that Defendant is not excused from satisfying the administrative exhaustion and judicial review requirements in § 1326(d). Thus, the Court concludes that Defendant has failed to make the showing necessary to collaterally attack his prior Removal Order pursuant to § 1326(d) because Defendant cannot demonstrate that (i) he exhausted his administrative remedies ( § 1326(d)(1) ) and (ii) that his removal proceedings deprived him of the opportunity for judicial review ( § 1326(d)(2) ).[18] On that basis, and notwithstanding the fact that the Court has concluded that Defendant received a deficient NTA for his underlying removal proceedings, Defendant's Motion to Dismiss must be denied.
CONCLUSION AND ORDER
For the reasons set forth above, the Government's Motion to Reconsider (docket no. 31) is GRANTED , and Defendant's Motion to Dismiss (docket no. 23) is DENIED .
It is so ORDERED .

Numerous district courts have addressed the issue in the months since Pereira. Several district courts (including at least three other courts in this District) have dismissed § 1326 indictments after finding that the alien had been served with a deficient NTA for the prior removal proceedings, and thus, the immigration judge was never vested with jurisdiction. See United States v. Virgen-Ponce , 320 F.Supp.3d 1164 (E.D. Wash. 2018) ; United States v. Lopez-Urgel , No. 1:18-CR-310-RP, 351 F.Supp.3d 978, 2018 WL 5984845 (W.D. Tex. Nov. 14, 2018) ; United States v. Alfredo Valladares , No. 1:17-CR-156-SS, docket no. 44, 2018 WL 6629653 (W.D. Tex. Oct. 30, 2018) ; United States v. Pedroza-Rocha , No. EP-18-CR-1286-DB, docket no. 53, 2018 WL 6629649 (W.D. Tex. Sept. 21, 2018) ; United States v. Cruz-Jimenez , No. A-17-CR-00063, 2018 WL 5779491 (W.D. Tex. Nov. 2, 2018) ; United States v. Ortiz , No. 3:18-CR-00071-RWG, 347 F.Supp.3d 402, 2018 WL 6012390 (D.N.D. Nov. 7, 2018). On the other hand, many district courts have found-for various different reasons-that defendants' § 1326 indictments were not subject to dismissal. Some of those courts have determined from the outset that Pereira is inapplicable or distinguishable. See, e.g., United States v. Morales-Hernandez , No. Cr.-18-00365-TUC-RCC (JR), 2018 WL 4492377 (D. Ariz. Sept. 14, 2018) ; United States v. Munoz-Alvarado , No. CR-18-171-C, 2018 WL 4762134 (W.D. Okla. Oct. 2, 2018) ; United States v. Fernandez , No. 7.18-CR-11-BO-1, 2018 WL 4976804 (E.D.N.C. Oct. 15, 2018). However, others have found that Pereira is applicable (and that the defendant's underlying NTA was deficient) but have nonetheless held that the specific defendant failed to satisfy the statutory requirements for a collateral attack on a prior removal order. See, e.g, United States v. Santos Larios-Ajualat , No. 18-10076-JWB, 2018 WL 5013522 (D. Kan. Oct. 15, 2018) ; United States v. Lira-Ramirez , No. 18-10102-JWB, 2018 WL 5013523 (D. Kan. Oct. 15, 2018) ; United States v. Mendoza-Sanchez , No. 17-cr-189-JD, 2018 WL 5816346 (D.N.H. Nov. 5, 2018). It was in light of these various approaches that the Court vacated its Prior Order and requested additional briefing.

The "stop-time rule" is related to one of the requirements for non-citizen aliens seeking cancellation of removal. Among other requirements, applicants for cancellation of removal must show that they have been physically present in the United States for a continuous period of at least 10 years immediately preceding the date of application. § 1229b(b)(1)(A). The "stop-time rule" states that a non-citizen stops accruing "continuous presence" time upon being "served a notice to appear under section 1229(a)" initiating removal proceedings. § 1229b(d)(l)(A).

The "Notice to Appear" described by the statute and the "Notice to Appear" described in the regulation both refer to the "initiation" or "commencement" of removal proceedings and both indicate that the NTA is intended to function as a charging document. Compare 8 U.S.C. § 1229(a)with 8 C.F.R. § 1003.13 -15. Further, the required contents for a "Notice to Appear" listed under § 1229(a)(1) are substantively identical to those included in the regulations once the language in § 1003.18 is considered, other than that the regulations provide an apparent exception to the inclusion of time and place information-if "impracticable"-which is not found in the statute.

The Court notes that a Fifth Circuit opinion recently cited two district court cases that distinguished Pereira outside of the "stop-time" context. See Mauricio-Benitez v. Sessions , 908 F.3d 144, 148 n.1 (5th Cir. 2018) (citing Ramat v. Nielsen , 317 F.Supp.3d 1111, 1116-17 (S.D. Cal. 2018) and United States v. Ibarra-Rodriguez , No. CR-18-190-M, 2018 WL 4608503, at *3 (W.D. Okla. Sept. 25, 2018) ). For the reasons set forth above, the Court finds the plain language of the statute to be more persuasive than the non-binding Ramat and Ibarra-Rodriguez decisions. It also appears that the Fifth Circuit's citations in Mauricio-Benitez were intended to distinguish cancellation proceedings from the reopening of removal proceedings, and the Fifth Circuit did not directly address the issues raised in this case. See Mauricio-Benitez , 908 F.3d at 148 n.1. However, consistent with this Court's holding, the Fifth Circuit-citing Pereira -stated that "[a]n alien's period of continuous physical presence for purposes of cancellation ends when the alien is served a NTA that fully complies with the statutory requirements .... [and] [t]he filing of the NTA, in turn, initiates removal proceedings against the alien." Id. at 148 n.1 (emphasis added). The Court finds it unlikely that the Fifth Circuit would explicitly refer to a statutory-compliant NTA in one sentence, but reference a statutorily-deficient NTA in the next sentence.

In Pereira , the NTA did not include a time and date, and instead, Mr. Pereira was mailed a separate Notice of Hearing stating the time and date of the removal proceedings. 138 S.Ct. at 2112. However, the Notice of Hearing was mailed to an incorrect address, and Mr. Pereira failed to appear at his removal hearing. Id.

For the same reason, the Court is unpersuaded by the post-Pereira BIA opinion that held that an NTA need not contain time and place information if a subsequent notice of hearing is served on the alien. See In re Bermudez-Cota , 27 I. & N. Dec. 441 (BIA 2018). As an initial matter, the BIA's opinion relies on a line of case law that seemingly is no longer applicable (at least with respect to the validity of a deficient NTA as a charging document) following Pereira . Id. at 447. Further, the Supreme Court made clear that this is not an issue on which the BIA is entitled to deference. Specifically, the Pereira Court explained that Congress "supplied a clear and unambiguous answer" as to the requirements for NTAs under § 1229(a), and thus, "the Court need not resort to Chevron deference." Pereira at 2114 (citing Chevron , 467 U.S. at 842-43, 104 S.Ct. 2778 ) (stating that "the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress"). In light of Congress's clear language and the Pereira Court's explicit analysis of this issue, the Court finds the statute's unambiguous language more persuasive than the agency's continued insistence that 1229(a) does not require NTAs to contain time and place information to initiate § 1229a proceedings.

This Court's Prior Order-which has since been vacated-adopted a similar line of reasoning.

The Supreme Court stated that, at that time, certain Court of Appeals had held that the underlying deportation is an "element of the offense defined by § 1326 only if it is 'lawful'." 481 U.S. at 834-35, 107 S.Ct. 2148. However, the Mendoza-Lopez Court specifically noted that "the language of the statute ... suggests no such limitation." Id.

Citing James v. Gonzales , 464 F.3d 505, 513-14 (5th Cir. 2006), the Castelan-Jaimes decision stated that the defendant was "correct" in his assertion that the BIA did not have the jurisdictional authority to issue a removal order in the first instance. Id. at 254. In James v. Gonzales , the Fifth Circuit had previously held that under the statutory framework of the INA, "only an [immigration judge] may enter an order of removal in the first instance." 464 F.3d at 514.

There appears to be confusion about whether "jurisdiction" in 8 C.F.R. § 1003.14 refers to personal jurisdiction, subject-matter jurisdiction, or both. See Marco v. United States , No. 1:09-cv-761, 2010 WL 3992113, at *8 (S.D. Ohio Oct. 12, 2010) (concluding that "jurisdiction" in 8 C.F.R. § 1003.14(a)"denotes subject-matter jurisdiction"); Shogunle v. Holder , 336 F. App'x 322, 323 (4th Cir. 2009) (concluding that "jurisdiction" had not vested with immigration court under 8 C.F.R. § 1003.14 notwithstanding the fact that alien had appeared at the hearing); Lira-Ramirez , 2018 WL 5013523, at *6 n.4 (explaining why "jurisdiction" in 8 C.F.R. § 1003.14 also contains parallels to the standard requirements for personal jurisdiction, including the service of process). As a general rule, personal jurisdiction can be waived by appearance and failure to object, see Am. Ass'n of Naturopathic Physicians v. Hayhurst , 227 F.3d 1104, 1106 (9th Cir. 2000), whereas subject-matter jurisdiction cannot be waived at any time during the underlying proceedings. See Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee , 456 U.S. 694, 702-03, 102 S.Ct. 2099, 72 L.Ed.2d 492 (1982). This Court believes that subject-matter jurisdiction is the more appropriate comparison, however, because the Court ultimately concludes that even collateral attacks based on defects in an immigration court's subject-matter jurisdiction are subject to the requirements of § 1326(d) (and thus can be "waived"), it is not necessary for the Court to resolve the issue as part of this Order.

Under this standard, as long as the record supports an "arguable basis" for concluding that subject-matter jurisdiction existed, a judgment cannot be collaterally attacked as void. See Fafel v. Dipaola , 399 F.3d 403, 411 (1st Cir. 2005) ; Nemaizer v. Baker , 793 F.2d 58, 65 (2d Cir. 1986).

As noted above, the Fifth Circuit had previously held that only an immigration judge has the jurisdictional authority to issue a removal order in the first instance. See note 9, supra.

The general standard for "prejudice" requires the noncitizen to show that "there was a reasonable likelihood that but for the errors complained of the defendant would not have been deported." United States v. Cordova-Soto , 804 F.3d 714, 718-19 (5th Cir. 2015). "In short, if the defendant was legally deportable and, despite the ... errors, the proceeding could not have yielded a different result, the deportation is valid for purposes of section 1326." Benitez-Villafuerte , 186 F.3d at 659 (internal quotations omitted).

In its Prior Order-which has since been vacated-the Court did not conduct a thorough analysis of each of § 1326(d)'s requirements, as the Court relied primarily on a separate, independent basis for dismissal.

Defendant's supplemental briefing asserts-for the first time-that Defendant was also prejudiced by the fact that the interpreter and judge were speaking over video conference and that Defendant "was deprived of the opportunity to obtain voluntary departure." Docket no. 40 pp. 8-9. Other than providing a conclusory assertion that the use of video conference procedures prejudiced Defendant, Defendant cites no law or evidence to support a finding of actual prejudice resulting from the hearing's format. Defendant also provides no explanation as to how the hearing deprived him of the opportunity to obtain voluntary departure. Thus, it is clear that Defendant has not satisfied his burden with respect to these assertions. See United States v. Rangel de Aguilar , 308 F.3d 1134, 1139 (10th Cir. 2002) (rejecting an alien's challenge to the validity of prior removal order when the alien presented no evidence supporting the various bases on which the alien contended the prior order was invalid).

Defendant's supplemental briefing also briefly asserts-for the first time-that Defendant's waiver of his appellate rights was not "knowing." See docket no. 40 pp. 8-9. It is true that-in order to be valid-a waiver of appellate rights must be "considered and intelligent." Mendoza-Lopez , 481 U.S. at 840, 107 S.Ct. 2148. However, Defendant provides no citation or support in the record for his conclusory assertion that his waiver was not "knowing," and as set forth above, the record does contain evidence indicating that Defendant was informed of his appellate rights and voluntarily chose to waive those rights at his hearing. See docket nos. 31-1 & 31-3. In light of Defendant's documented "waiver" and in the absence of specific evidence to the contrary-of which there is none in the record-the Court cannot presume that Defendant's waiver was involuntary or not "knowing" such that Defendant was denied the opportunity for judicial or administrative review. See United States v. Rivera-Nevarez , 418 F.3d 1104, 1111 (10th Cir. 2005) ; United States v. Edgar , 348 F.3d 867, 872-73 (10th Cir. 2003). ("A mere silent record does not satisfy th[e] burden" of demonstrating that a waiver was not "knowing" or "voluntary").

It appears that the BIA's position is that such a procedure is still permissible under § 1229(a), even in light of Pereira . See In re Bermudez-Cota , 27 I. & N. Dec. 441 (BIA 2018). For the reasons set forth in Section I and note 6, supra , the Court is unpersuaded by the BIA's recent Bermudez-Cota decision.

Because the Court has concluded that Defendant has satisfied neither § 1326(d)(1) nor § 1326(d)(2), the Court need not conduct a thorough analysis as to (i) whether the defects in Defendant's removal procedure constituted "fundamental unfairness" or (ii) whether, as a result of the unfairness, Defendant suffered "actual prejudice." Cordova-Soto , 804 F.3d at 724. Multiple courts in this District have concluded that the fundamental unfairness requirement in § 1326(d)(3) is satisfied when the underlying removal order was issued by an immigration judge lacking jurisdiction. See Pedroza-Rocha , No. 3:18-cr-01286-DB, docket no. 53 p. 10 ; Lopez-Urgel , 351 F.Supp.3d at 990-92, 2018 WL 5984845, at *7-8. At least one court in this District has also held that "a removal proceeding in which the immigration judge lacked jurisdiction is so fundamentally unfair that [defendant] need not show prejudice." Lopez-Urgel , 351 F.Supp.3d at 991-92, 2018 WL 5984845, at *8 (citing Benitez-Villafuerte , 186 F.3d at 659 ). Here, it is not apparent that Defendant could demonstrate that he suffered "actual prejudice" as a result of the error in question, if he is required to do so as part of his § 1326(d) showing. Specifically, the record indicates that Defendant ultimately received the hearing's time and date information in the subsequent Notice of Hearing, appeared at his removal proceedings, was advised of his right to administrative and/or judicial review, and waived those rights. There is no obvious indication that anything would have occurred differently-at least with respect to Defendant's removal hearing and removal-had DHS complied with § 1229(a) and included the time and date of the hearing in Defendant's NTA rather than in Defendant's Notice of Hearing. However, in light of the Court's conclusions regarding the other requirements of § 1326(d) and the open question as to whether a jurisdictional defect could potentially be so "fundamentally unfair" as to excuse the showing of "prejudice," the Court finds it unnecessary to make "actual prejudice" (or the lack thereof) a basis for the disposition of Defendant's Motion to Dismiss.