# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 14-50053

United States Court of Appeals
Fifth Circuit

**FILED**

October 23, 2015

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff - Appellee

v.

GABRIELA CORDOVA-SOTO,

Defendant - Appellant

Appeal from the United States District Court
for the Western District of Texas

Before BENAVIDES, CLEMENT, and HIGGINSON, Circuit Judges.

FORTUNATO P. BENAVIDES, Circuit Judge:

This is a direct criminal appeal in which the appellant is challenging her conviction for illegal reentry into the United States as a previously removed alien. *See* 8 U.S.C. § 1326. Appellant Gabriela Cordova-Soto ("Cordova") appeals the district court's denial of her motion to dismiss the indictment, arguing that the order of removal, which formed the basis for the instant offense, was invalid. More specifically, Cordova contends that the Immigration Judge ("IJ") failed to expressly find that her waiver of rights and stipulation of removability was voluntary, knowing, and intelligent as required by 8 C.F.R. § 1003.25(b). She also contends that her waiver was involuntary because it

No. 14-50053

was induced by incorrect advice given to her by an immigration officer. Finding no reversible error, we AFFIRM.

I.     PROCEDURAL HISTORY

Cordova is a Mexican national who was brought into the United States as an infant. In 1991, she attained lawful permanent residency at age 13. In May 2002, she was convicted of misdemeanor theft. The next year she was convicted of passing a worthless check. In 2005, she pleaded guilty to felony possession of methamphetamine in Kansas state court. Later that year, agents of the Immigration and Customs Enforcement Agency ("ICE") served Cordova with a Notice to Appear before an IJ. The notice charged her as removable as (1) an aggravated felon based on the methamphetamine conviction, (2) an alien convicted of two crimes involving moral turpitude (theft and worthless check convictions), and (3) an alien convicted of a controlled substance offense (same methamphetamine conviction). *See* 8 U.S.C. § 1227(a)(2)(A)(ii), (a)(2)(A)(iii), and (a)(2)(B)(i).

At the processing center in Chicago, an ICE agent presented Cordova with a boiler plate form that was entitled Stipulated Request for Issuance of Final Order of Removal, Waiver of Appearance and Hearing ("Stipulated Form of Removal"). The agent told Cordova that she had no basis to challenge her removal and that any attempts to challenge it would only prolong her detention. The agent informed her that she could call a legal service organization and gave her a list of phone numbers. Cordova called one legal service organization and briefly spoke to a person who also told her that she did not have any basis for seeking cancellation of removal. Cordova, who speaks and reads English, signed the Stipulated Form of Removal and dated it November 1, 2005. The form provided that she had been "fully advised of [her] rights" and "hereby voluntarily, knowingly and intelligently enter[s] into

2

the following stipulations." It also provided that she had been advised of her right to be represented by counsel and right to a removal hearing. It further provided that she waived any right to make any application for relief from removal under the Immigration and Nationality Act. On the final page of the form, albeit dated six days later on November 7, 2005, ICE Agent James Gutierrez certified that he had read and explained the document to Cordova.

On November 8, 2005, after finding Cordova removable, the IJ accepted the Stipulated Form of Removal and ordered her removed to Mexico. Approximately three weeks later, on November 27, 2005, Cordova reentered the United States. Several years later, on March 18, 2010, local law enforcement officers discovered Cordova in Kansas. On September 15, 2010, she was taken into the custody of the Department of Homeland Security. The 2005 order of removal was reinstated, and Cordova was removed to Mexico on September 26, 2010. She appealed to the Board of Immigration Appeals ("BIA"), and her appeal was dismissed. Cordova appealed to the Tenth Circuit, requesting review of the initial removal order and the reinstated removal order, and her petition was denied. *Cordova-Soto v. Holder*, 659 F.3d 1029, 1030 (10th Cir. 2011). The Tenth Circuit held that it did not have jurisdiction to review the 2005 order because she had not filed her petition for review within 30 days of her 2005 removal as directed by 8 U.S.C. § 1252(b)(1). *Id.* at 1032. The court found that it had jurisdiction to review the 2010 removal order but denied it on the merits. *Id.* at 1035. The court held that "[b]ecause she could not have entered the United States legally at [the time of her reentry], her reentry was illegal and she was therefore subject to reinstatement of her previous removal order under 8 U.S.C. § 1231(a)(5)." *Id.*[1]

---

[1] Section 1231(a)(5) provides as follows:

No. 14-50053

On January 24, 2012, Cordova filed a motion seeking to reopen her 2005 order of removal in the Kansas City Immigration Court, which the IJ denied on June 6, 2012. The BIA upheld the IJ's decision on September 17, 2012. Cordova petitioned for review of the denial of the motion to reopen the 2005 removal order in the Seventh Circuit. *Cordova-Soto v. Holder*, 732 F.3d 789, 793 (7th Cir. 2013), *cert. denied*, 135 S. Ct. 85 (2014). Like the Tenth Circuit, the Seventh Circuit held that it did not have jurisdiction to review the 2005 removal order because the appeal was not filed within the 30-day time limit contained in 8 U.S.C. § 1252(b)(1). *Id.*[2] The court explained that although it did have jurisdiction to consider the merits of the denial of Cordova's motion to reopen, it held that 8 U.S.C. § 1231(a)(5) "prohibits collateral review after the review of the reinstatement is complete." *Id.* at 795. The court thus denied the petition. *Id.* at 796.

Meanwhile, on September 6, 2012, Border Patrol agents arrested Cordova for being an alien illegally present in the United States. On October 3, a grand jury in Del Rio, Texas indicted Cordova for the offense of illegal reentry after removal in violation of 8 U.S.C. § 1326. Cordova filed a motion to dismiss the indictment, challenging the validity of the 2005 removal order. She argued, among other things, that the removal order was fundamentally

---

> If the Attorney General finds that an alien has reentered the United States illegally after having been removed or having departed voluntarily, under an order of removal, the prior order of removal is reinstated from its original date and is not subject to being reopened or reviewed, the alien is not eligible and may not apply for any relief under this chapter, and the alien shall be removed under the prior order at any time after the reentry.

[2] The government moved to dismiss the petition for improper venue or transfer to the Eighth Circuit. 732 F.3d at 792. The Seventh Circuit recognized that a petition for review should be filed with the court of appeals for the judicial circuit in which the IJ completed the proceedings. *Id.*; 8 U.S.C. § 1252(b)(2). However, the court stated that the statute was not jurisdictional and concluded that the interest of justice favored retaining the petition in the Seventh Circuit. *Id.*

unfair because the IJ did not conduct a hearing and expressly determine that her waiver of rights in the Stipulated Form of Removal was voluntary, knowing, and intelligent as required by 8 C.F.R. § 1003.25(b).  The district court noted that (1) Cordova is fluent in English, (2) the stipulation she signed is written in plain language that clearly stated the legal effect of signing the waiver, (3) she does not in fact claim that she unknowingly signed it—only that the IJ failed to make such a determination, and (4) the record contains a certification by the ICE agent that he explained to her the rights she was waiving by signing the document.  The district court ruled that "[a]ll of these facts taken together support a finding that the Defendant intelligently, knowingly, and voluntarily entered into the Stipulation of removal."  The court further found that although the IJ did not conduct a hearing or colloquy to determine whether her waiver was voluntary and knowing, "the acceptance of the Stipulation supports an implicit finding that the IJ determined the Stipulation was given as such."  Accordingly, the district court denied the motion to dismiss the indictment.

Cordova pleaded guilty.  In the plea agreement, Cordova reserved the right to appeal all issues relating to the district court's ruling on the motion to dismiss the indictment.  Cordova now appeals.

II.     ANALYSIS

Cordova contends that because her prior order of removal was invalid, the district court erred in denying her motion to dismiss the instant indictment charging her with illegal reentry.  We review de novo a district court's denial of a motion to dismiss the indictment, including any underlying constitutional claims.  *United States v. Villanueva-Diaz*, 634 F.3d 844, 848 (5th Cir. 2011).  This court accepts "all factual findings made by the district court in connection with that ruling unless clearly erroneous."  *Id.*   A factual finding is clearly

erroneous only if, based on the entirety of the evidence, the reviewing court is left with the definite and firm conviction that a mistake has been made. *United States v. Valdez*, 453 F.3d 252, 262 (5th Cir. 2006).

The Supreme Court has held that an alien who is prosecuted for illegal reentry may collaterally attack the underlying removal order. *United States v. Mendoza-Lopez,* 481 U.S. 828, 839 (1987). More specifically, the Supreme Court held that due process requires collateral review of deportation orders that form the basis of a prosecution for illegal reentry, explaining that "where the defects in an administrative proceeding foreclose judicial review of that proceeding, an alternative means of obtaining judicial review must be made available before the administrative order may be used to establish conclusively an element of a criminal offense." *Id.* at 838. After *Mendoza-Lopez,* this court held that to collaterally attack a prior removal order in a criminal proceeding, the alien must demonstrate that:

> (1) the removal hearing was fundamentally unfair; (2) the hearing effectively eliminated the right of the alien to challenge the hearing by means of judicial review of the order; and (3) the procedural deficiencies caused the alien actual prejudice.

*United States v. Lopez-Ortiz,* 313 F.3d 225, 229 (5th Cir. 2002). To show prejudice, an alien must show that "there was a reasonable likelihood that but for the errors complained of the defendant would not have been deported." *United States v. Benitez-Villafuerte*, 186 F.3d 651, 658–59 (5th Cir. 1999). This test was "effectively codified" in 8 U.S.C. § 1326(d). *United States v. Lopez-Vasquez*, 227 F.3d 476, 483 n.13 (5th Cir. 2000). Section 1326(d) provides that an alien may not challenge the validity of a removal order unless the alien establishes that:

No. 14-50053

> (1) the alien exhausted any administrative remedies that may have been available to seek relief against the order; (2) the deportation proceeding at which the order was issued improperly deprived the alien of the opportunity for judicial review; and (3) the entry of the order was fundamentally unfair.

To successfully challenge a removal order, the alien must prove all three prongs. "If the alien fails to establish one prong of the three part test, the Court need not consider the others." *United States v. Mendoza-Mata,* 322 F.3d 829, 832 (5th Cir. 2003).

A.  Fundamentally Unfair Under § 1326(d)

Cordova contends that her removal proceedings, which formed the basis for the instant criminal conviction, were fundamentally unfair.  § 1326(d)(3). "Fundamental fairness is a question of procedure." *Lopez-Ortiz,* 313 F.3d at 230.  Cordova contends that her waiver of the right to a hearing before the IJ was invalid because it was based on critical misinformation with respect to the possibility of cancelling her removal.  Additionally, she contends that the IJ's failure to expressly make a determination that her waiver was knowing and voluntary in violation of the pertinent regulation rendered her removal proceedings involuntary.

In Cordova's motion to dismiss the indictment filed in the district court, she failed to argue that her waiver was involuntary based on the alleged misinformation from the ICE agent.  The factual section of her motion explained that the agent advised her that "if she wanted to be removed quickly she should sign" the waiver form and that "either way, she was going to be deported."  The factual section of her motion also stated that "[n]otwithstanding that the law concerning simple drug possession was in flux, on November 7, 2005, ICE agents persuaded Cordova to sign" the waiver of

7

removal hearing.  Nonetheless, Cordova never argued that the agent's advice rendered her waiver involuntary.  Instead, she *only* challenged the validity of her waiver based on the IJ's failure to expressly find that her stipulated removal request and waiver of rights was voluntary and knowing.  Tellingly, the district court did not address a claim that the waiver was rendered involuntary by the ICE agent's advice.[3]  Thus, we will first review de novo her argument that the IJ's failure to make a finding with respect to the voluntariness of her waiver rendered the proceedings fundamentally unfair.  We will then review for plain error her argument that the agent's advice rendered her waiver involuntary.  *See Puckett v. United States*, 556 U.S. 129, 135 (2009).

### 1.  IJ's Failure to Make a Finding of Voluntariness

Cordova correctly contends that the IJ failed to expressly find that her waiver was voluntary, knowing, and intelligent as required by 8 C.F.R. § 1003.25(b).  Section 1003.25(b) provides that an IJ "may enter [a removal] order without a hearing and in the absence of the parties based on a review of the charging document, the written stipulation, and supporting documents, if any."  However, "[i]f the alien is unrepresented, the Immigration Judge must determine that the alien's waiver is voluntary, knowing, and intelligent." *Id.*

Cordova, who was unrepresented, argues that this error rendered her removal proceedings fundamentally unfair and that she was deprived of an immigration hearing in violation of due process.  This court has not addressed the precise question of whether an IJ's failure to expressly make a determination of the voluntariness of the waiver in violation of 8 C.F.R. §

---

[3] Indeed, the district court stated that although Cordova repeatedly contended that the IJ failed to make a voluntariness determination, she never claimed that her waiver was actually unknowing and involuntary.

1003.25(b) constitutes a due process violation that renders the removal proceedings fundamentally unfair.[4]

Nonetheless, this court's precedent with respect to determining whether an alien has received due process during deportation proceedings provides guidance for the instant analysis. In *Benitez-Villafuerte*, an alien was convicted of an aggravated felony and deported following expedited removal proceedings conducted within the Immigration and Naturalization Service ("INS"). 186 F.3d at 654. Benitez subsequently reentered the United States without permission and was charged with illegal reentry after deportation under § 1326. *Id.* Like Cordova, Benitez challenged the validity of the deportation order that formed the basis of the illegal reentry prosecution. *Id.* at 656. The district court held that "Benitez's waiver of rights executed before INS officers did not constitute an effective waiver of his basic rights to judicially contest his deportation because his waiver had not been made in open court before a neutral magistrate who could affirm that the waiver was knowing and voluntary." *Id.*

On appeal, this court explained that the due process clause prohibits the government "from 'arbitrarily . . . causing an alien who has entered the country . . . illegally to be taken into custody and deported without giving him all opportunity to be heard upon the questions involving his right to be and remain in the United States.'" *Id.* (quoting *Yamataya v. Fisher,* 189 U.S. 86, 101 (1903)). "[D]ue process requires only that an alien be provided notice of the charges against him, a hearing before an executive or administrative tribunal,

---

[4] *See Altamirano-Lopez v. Keisler,* 250 F. App'x 658, 659 (5th Cir. 2007) (although petitioners raised a due process violation based on the IJ's failure to determine whether their waivers were voluntary under § 1003.25(b), this court did not reach the argument because it dismissed the claims for lack of jurisdiction).

and a fair opportunity to be heard." *Id.* at 657. However, due process rights, including the right to a hearing, can be waived. *Id.*

In *Benitez-Villafuerte*, the record demonstrated that an INS agent gave Benitez notice of the charges against him and that the agent explained to him that he had a right to a hearing to contest the charges. *Id.* at 658. Benitez waived that right. *Id.* Additionally, Benitez waived his right to a 14-day stay of execution of the deportation order. *Id.* This court stated that the record showed Benitez was provided with "ample constitutional protection." *Id.* We noted that there was no record evidence that Benitez's waiver was not knowing and voluntarily. *Id.*[5]

Here, Cordova received notice of the charges and was informed that she had the right to be represented by an attorney. The agent gave Cordova the telephone numbers to legal services organizations. She called one of the numbers and was given the same advice that the agent had provided. She was also told that she could contest the charges in a hearing. After being informed of those rights, Cordova signed the stipulation waiving them. This sequence of events is indistinguishable from the procedural due process afforded in *Benitez,* and there we held that that the alien received ample constitutional protection.[6]

---

[5] In *Benitez*, the alien argued that his waiver of rights was not voluntary. 186 F.3d at 660 n.9. However, because the alien failed to show prejudice, the court did not consider the argument on appeal. *Id.*

[6] Citing Rule 11 of the Federal Rules of Criminal Procedure, Cordova contends that the IJ's failure to make a determination of the voluntariness of her waiver of rights is akin to a district court's failure to conduct a plea colloquy prior to accepting a guilty plea. This contention is without merit. "Removal hearings are civil proceedings, not criminal; therefore, procedural protections accorded an alien in a removal proceeding are less stringent than those available to a criminal defendant." *Lopez-Ortiz*, 313 F.3d at 230.

No. 14-50053

Moreover, the district court found that the record evidence supports an *implicit* finding that Cordova's waiver was knowing and voluntary.   We have construed an administrative record as showing that an IJ made an implicit finding of good moral character, which was a prerequisite for the grant of voluntary departure.   *Rodriguez-Gutierrez v. INS*, 59 F.3d 504, 508 (5th Cir. 1995).   Thus, we now look to see whether the district court clearly erred in finding that the record supports an implicit finding that the IJ determined the waiver was knowing and voluntary.

The district court began by observing that Cordova did *not* claim that the waiver was actually unknowing and involuntary.   The court stated that Cordova had lived in this country since she was an infant and spoke English fluently.   The court found that the waiver form she signed was "written in plain, non-legalese language that clearly stated the legal effect of the instrument."   Additionally, the court noted that the record demonstrated that an immigration officer explained to her the provisions in the form and what legal rights she was waiving.   The district court stated that all of these facts support a finding that Cordova intelligently, knowingly, and voluntarily signed the waiver form.   The court further found that the IJ's acceptance of the waiver "supports an implicit finding that the IJ determined" the waiver was knowing and voluntary.   Under these circumstances, Cordova has not shown that the district court's findings are clearly erroneous or that the court abused its discretion in not conducting an evidentiary hearing.   *See United States v. Gutierrez*, 343 F.3d 415, 421 (5th Cir. 2003).   Our decision rests upon the particular facts as presented in this appeal.   Of course, the better procedure is for an ICE agent to contemporaneously certify his explanation of rights and the alien's waiver, as well as for an IJ to follow the regulation, which directs him to make the finding regarding voluntariness.   § 1003.25(b).   Nevertheless,

the "failure of an agency to follow its own regulations is not, however, a per se denial of due process unless the regulation is required by the constitution or a statute." *Arzanipour v. INS*, 866 F.2d 743, 746 (5th Cir. 1989). As discussed above, this court's opinion in *Benitez* supports our conclusion that due process does not require a separate finding by an IJ that the *pro se* alien's waiver is knowing and voluntary.[7] We reject Cordova's claim that the IJ's failure to make an express determination of voluntariness constituted a due process violation and conclude that such failure did not render her proceedings fundamentally unfair.

### 2.    Advice from the ICE Agent

Cordova also contends that the ICE agent misinformed her with respect to her eligibility for relief from removal and that the misinformation induced her to sign the waiver. As previously mentioned, because Cordova did not raise this argument before the district court, we review it for plain error. *See United States v. Chavez–Hernandez*, 671 F.3d 494, 497 (5th Cir. 2012). To succeed on plain error review, an appellant must show (1) a forfeited error, (2) that is clear or obvious, and (3) that affects her substantial rights. *See Puckett v. United States*, 556 U.S. 129, 135 (2009). If an appellant makes such a showing, we may exercise our discretion "to remedy the error . . . only if the error seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." *Id.* (alteration in original) (internal quotation marks and citation omitted).[8]

---

[7]   In contrast, the Ninth Circuit has held that an IJ could not have found that the alien's waiver was voluntary and knowing based only on the signed stipulated form of removal. *United States v. Gomez,* 757 F.3d 885, 898 (9th Cir. 2014). The court found that it constituted an invalid waiver of the right to appeal and that it was a violation of 8 C.F.R. § 1003.25(b).

[8] The government argues that Cordova's plea agreement waived this claim. The plea agreement waived any appeal except for "issues relating to the district court's ruling on Defendant's Motion to Dismiss Indictment." Because this issue is related to the court's ruling

No. 14-50053

Cordova contends that the ICE agent incorrectly advised her that her prior drug conviction was an aggravated felony, which rendered her ineligible for relief from removal, and that the misinformation induced her to sign the waiver. Having an aggravated felony makes an alien ineligible for cancellation of removal, 8 U.S.C. § 1229b(a)(3), and Cordova was charged with having an aggravated felony, the methamphetamine conviction. The agent's advice regarding the availability of relief was correct with respect to the applicable BIA precedent at the time. *In re Ismael Yanez-Garcia*, 23 I & N Dec. 390, 398 (BIA 2002). However, a few months after Cordova's removal proceedings, the Seventh Circuit and the Supreme Court determined that an offense such as Cordova's drug conviction does not qualify as an aggravated felony. *Gonzales-Gomez v. Achim*, 441 F.3d 532, 533 (7th Cir. 2006); *Lopez v. Gonzales,* 549 U.S. 47, 60 (2006).

Cordova contends that the misinformation about the possibility of obtaining relief rendered her waiver unknowing and involuntary. Relying on *Mendoza-Lopez*, Cordova asserts that the invalid waiver rendered her removal proceedings fundamentally unfair. However, in *Mendoza-Lopez*, the Supreme Court accepted the government's invitation to *assume* (and not decide) that the "respondents' rights to due process were violated by the failure of the Immigration Judge to explain adequately their right to suspension of deportation or their right to appeal." 481 U.S. at 839–40. Thus, Cordova's reliance on *Mendoza-Lopez* is misplaced.

Our precedent precludes Cordova from demonstrating plain error. We have held that relief that is "available within the broad discretion of the

---

on the motion to dismiss the indictment, we reject the government's argument that this claim is waived by the plea agreement.

13

Attorney General is not a right protected by due process." *Lopez-Ortiz*, 313 F.3d at 231. More specifically, we held that because an alien's eligibility for discretionary relief from removal is not a liberty or property interest deserving of due process protection, an IJ's failure to explain the eligibility for such relief "does not rise to the level of fundamental unfairness." *Id.* It is undisputed that the cancellation of removal at issue in the instant case constitutes discretionary relief. Accordingly, it follows that the ICE agent's failure to explain to Cordova that there was a possibility that she could become eligible for discretionary relief does not demonstrate fundamental unfairness.

Cordova recognizes our precedent and attempts to distinguish her case. She asserts that *Lopez-Ortiz* does not control her case because she did not receive a hearing, and it was undisputed that Lopez-Ortiz was afforded a hearing and a fair opportunity to be heard. 313 F.3d at 230–31. Cordova argues that the misinformation regarding her eligibility to avoid removal resulted in the deprivation of her right to a removal hearing, a right that *Lopez-Ortiz* emphasized is guaranteed by principles of due process. Thus, she contends that her case is not governed by *Lopez-Ortiz's* holding on fundamental fairness.[9]

We are not persuaded that *Lopez-Ortiz* does not control. Although the right to a hearing is guaranteed by due process, as previously explained, such a right can be waived. A majority of circuits agree with our holding in *Lopez-Ortiz* that there is no constitutional right to be informed of eligibility for—or to be considered for—discretionary relief. *United States v. Soto-Mateo*, 799 F.3d 117, 123 (1st Cir. 2015); *United States v. Santiago-Ochoa,* 447 F.3d 1015,

---

[9] Alternatively, Cordova seeks to preserve the argument that the holding in *Lopez-Ortiz* is incorrect and should be overturned by this court en banc or by the Supreme Court.

1020 (7th Cir. 2006); *United States v. Torres*, 383 F.3d 92, 104–06 (3rd Cir. 2004); *United States v. Aguirre-Tello*, 353 F.3d 1199, 1204–05 (10th Cir. 2004) (en banc); *Smith v. Ashcroft,* 295 F.3d 425, 430 (4th Cir. 2002); *Oguejiofor v. Attorney General of U.S.*, 277 F.3d 1305, 1309 (11th Cir. 2002); *Escudero-Corona v. INS*, 244 F.3d 608, 615 (8th Cir. 2001); *Ashki v. INS*, 233 F.3d 913, 921 (6th Cir. 2000). *But see United States v. Copeland*, 376 F.3d 61, 70–73 (2d Cir. 2004) (opining that a "failure to advise a potential deportee of a right to seek Section 212(c) relief can, if prejudicial, be fundamentally unfair"); *United States v. Arrieta*, 224 F.3d 1076, 1079 (9th Cir. 2000) (explaining that the IJ's failure to inform the alien of eligibility for relief from removal violated due process).

Moreover, in the above-cited First and Seventh Circuit cases, the aliens waived their right to a hearing and did not appear before an IJ. *Soto-Mateo*, 799 F.3d at 119; *Santiago-Ochoa,* 447 F.3d at 1019. Although the aliens had waived their right to a hearing, those two circuits held that the aliens had no constitutional right to be informed of their eligibility for discretionary relief. Those two cases are indistinguishable from Cordova's case. Agreeing with our sister circuits' reasoning, Cordova is precluded from showing that any error was clear or obvious.

Additionally, Cordova has not shown that the ICE agent's advice affected her substantial rights. In other words, she has failed to show that the agent's advice prejudiced her. If Cordova had gone before the IJ, there is no reason to believe that the IJ would have given her different advice with respect to her eligibility for cancellation of removal. As she points out, the alien in *Lopez-Ortiz* was afforded a hearing before an IJ. 313 F.3d at 227. However, in *Lopez-Ortiz,* once the IJ found the alien removable, the alien declined to remain in detention and did not appeal the ruling. *Id.* Cordova has failed to show that

she would have changed her mind about her willingness to remain detained had the same advice been given to her by an IJ instead of the agent. *Cf. Soto-Mateo,* 799 F.3d at 123–24 (explaining that the "appellant's unsolicited request to speed up the removal process is some indication that he had no stomach for deportation proceedings (during which he was likely to have been detained)"). Cordova has failed to show prejudice and thus cannot show her substantial rights were affected. At least in the context of plain error, Cordova has not carried her burden of showing that the agent's advice rendered her proceedings fundamentally unfair.

B.  Judicial Review and Exhaustion Under § 1326

Because Cordova failed to prove that her immigration proceedings were fundamentally unfair, we are not required to consider the other prongs of the test. *Mendoza-Mata,* 322 F.3d at 832. We briefly address the two remaining prongs of the test.

Cordova argues that she was improperly deprived of the opportunity for judicial review because her stipulation waiving review was invalid. As discussed above, we rejected her argument that the waiver was invalid, and thus, this argument falls under its own weight.

Similarly, Cordova contends that she is excused from exhausting her administrative remedies because the waiver was invalid. This argument likewise falls under its own weight. Cordova also argues that by filing the motion to reopen the proceedings in immigration court, she exhausted her administrative remedies. It is undisputed that she filed the motion to reopen years beyond the 90-day deadline. This court has held that filing an untimely motion to reopen removal proceedings more than one year after the expiration of the limitation period does not exhaust an alien's administrative remedies.

No. 14-50053

*Panova-Bohannan v. Gonzales,* 157 F. App'x 706, 707 (5th Cir. 2005).  Thus, we conclude that she did not properly exhaust her administrative remedies.

### III.    CONCLUSION

For the above reasons, the judgment of the district court is AFFIRMED.