KATHLEEN CARDONE, UNITED STATES DISTRICT JUDGE
On this day, the Court considered Defendant Gerardo Sandoval-Cordero's Motion to Dismiss the Indictment in the above-captioned case. ECF No. 39. Upon due consideration, the Court concludes that the Motion must be DENIED .
I. BACKGROUND
On August 15, 2018, the grand jury sitting in El Paso, Texas, returned a single-count Indictment charging Sandoval-Cordero with illegal reentry in violation of 8 U.S.C. § 1326. ECF No. 10. The government alleges that Sandoval-Cordero is a noncitizen who was found in this country without permission on July 17, 2018, and that he had previously been removed from the United States on or about February 22, 2017. Id.
Prior to Sandoval-Cordero's 2017 removal, an officer employed by the Department of Homeland Security personally served Sandoval-Cordero with a document entitled "Notice to Appear" ("NTA") on December 6, 2016. Mot. Ex. B. The NTA ordered Sandoval-Cordero to appear before an immigration judge ("IJ") "to show why [he] should not be removed from the United States based on the charge(s) set *725 forth [elsewhere in the NTA]." Id. However, the NTA did not provide Sandoval-Cordero with a date and time for the removal hearing. Instead, it simply stated he was to appear "on a date to be set at a time to be set." Id.
From the time Sandoval-Cordero received the NTA, he remained detained at the Johnson County Jail in Cleburne, Texas. ECF No. 43, Ex. D. On January 11, 2017, the immigration court in Dallas mailed him a document entitled "Notice of Hearing in Removal Proceedings" ("Notice of Hearing"), which provided information missing from the NTA: the removal hearing would take place on February 8, 2017, at 1:00 p.m. Id. When the date arrived, Sandoval-Cordero appeared before the IJ via video conference. Id. The IJ denied Sandoval-Cordero's application for relief from removal and ordered him removed to Mexico. Mot. Ex. C. After Sandoval-Cordero waived his right to appeal the IJ's decision, he was removed from this country on February 22, 2017. Id. Sometime after this removal, Sandoval-Cordero returned to the United States, was detained by immigration authorities, and now faces the current prosecution. ECF Nos. 1, 10.
II. DISCUSSION
Sandoval-Cordero moves to dismiss the Indictment, arguing that because the NTA did not indicate the date or time of his removal hearing the IJ lacked jurisdiction to order him removed in 2017. Mot. 2. Therefore, Sandoval-Cordero argues, his removal proceedings violated due process and the government cannot prove he was "removed" as a matter of law. Id. at 3-4. The government argues against dismissal, asserting that the IJ had jurisdiction to issue Sandoval-Cordero's removal and that, in any event, Sandoval-Cordero has not satisfied the requirements to collaterally attack his 2017 removal order. See generally Resp.
A noncitizen who has been removed from the United States commits a felony if he subsequently reenters the United States without permission. 8 U.S.C. § 1326. To convict under § 1326, the government must prove that the defendant has in fact been previously removed. United States v. Mendoza-Lopez , 481 U.S. 828, 835, 107 S.Ct. 2148, 95 L.Ed.2d 772 (1987). The government typically relies upon the removal order itself, issued by the immigration court, to satisfy this burden. Yet, in Mendoza-Lopez , the Supreme Court held that a defendant prosecuted under § 1326 must be able to challenge the government's use of a prior removal as an element of the offense where the removal proceeding "effectively eliminate[d] the right of the alien to obtain judicial review." Id. at 839, 107 S.Ct. 2148.[1]
Congress "effectively codified" this holding in 8 U.S.C. § 1326(d). United States v. Benitez-Villafuerte , 186 F.3d 651, 659 n.8 (5th Cir. 1999). To collaterally attack an underlying removal order, a defendant must show that:
(1) [he or she] exhausted any administrative remedies that may have been available to seek relief against the order;
(2) The deportation proceedings at which the order was issued improperly *726 deprived [him or her] of the opportunity for judicial review; and
(3) The entry of the order was fundamentally unfair.
8 U.S.C. § 1326(d).
The defendant must satisfy all three requirements to lodge a successful collateral attack. United States v. Cordova-Soto , 804 F.3d 714, 719 (5th Cir. 2015).[2] If the defendant fails to establish any one requirement, the court need not consider the others. Id. ; United States v. Mendoza-Mata , 322 F.3d 829, 832 (5th Cir. 2003). In addition, the Fifth Circuit requires the defendant to demonstrate that the underlying removal proceedings caused "actual prejudice." Benitez-Villafuerte , 186 F.3d at 658. "Actual prejudice" means "there was a reasonable likelihood that but for the errors complained of the defendant would not have been [removed]." Id. at 659.
Sandoval-Cordero's Motion to Dismiss relies primarily upon the Supreme Court's recent opinion in Pereira v. Sessions , --- U.S. ----, 138 S.Ct. 2105, 201 L.Ed.2d 433 (2018), to argue that because the NTA provided to him lacked the date and time of his removal hearing, the IJ lacked jurisdiction to order him removed from the United States, rendering the removal order "invalid." Mot. 4. The Court agrees with Sandoval-Cordero that the IJ lacked jurisdiction to order him removed from this country. However, as explained below, Sandoval-Cordero has not met the requirements in 8 U.S.C. § 1326(d) to successfully challenge his 2017 removal order.
A. Sandoval-Cordero's NTA Was Defective and, as a Result, the Immigration Judge Lacked Jurisdiction to Issue the 2017 Removal Order
Under 8 U.S.C. § 1229a, an IJ "shall conduct proceedings for deciding the inadmissibility or deportability" of a noncitizen present in the United States. 8 U.S.C. § 1229a(a)(1). Department of Justice ("DOJ") regulations delimit the jurisdiction of the IJ. In particular, "[j]urisdiction vests, and proceedings before an Immigration Judge commence, when a charging document is filed with the Immigration Court." 8 C.F.R. § 1003.14. The regulations define "charging document" to include "a Notice to Appear." Id. § 1003.13; see also Martinez-Garcia v. Ashcroft , 366 F.3d 732, 735 (9th Cir. 2004) ("The only charging document available after April 1, 1997, is the Notice to Appear."). The necessary contents of an NTA, in turn, are provided by statute, which states: "In removal proceedings under section 1229a of this title, written notice (in this section referred to as a 'notice to appear') shall be given ... to the alien ... specifying," inter alia , "[t]he time and place at which the proceedings will be held." 8 U.S.C. § 1229(a)(1).
In Pereira , the Supreme Court examined this statutory framework and concluded, "[a] putative notice to appear that fails to designate the specific time or place of the noncitizen's removal proceedings is not a 'notice to appear under section 1229(a).' " 138 S.Ct. at 2113-14. The Court reasoned that the "plain text [of § 1229(a) ], the statutory context, and common sense all lead inescapably and unambiguously to *727 that conclusion." Id. at 2110. The Court described § 1229(a)'s substantive requirements of an NTA as "definitional" and concluded "the omission of time-and-place information is not ... some trivial, ministerial defect .... Failing to specify integral information like the time and place of removal proceedings unquestionably would deprive [the NTA] of its essential character." Id. at 2116-17 (citations and quotation marks omitted).
Following the Supreme Court's holding in Pereira and the clear text of the statute, this Court concludes that because an NTA lacking a date or time is "not a 'notice to appear under section 1229(a),' " it is also not a "notice to appear" within the meaning of DOJ regulations setting the immigration court's jurisdiction. Id. Courts across the country have reached this same conclusion, including several in this district. See, e.g. , United States v. Virgen-Ponce , 320 F.Supp.3d 1164 (E.D. Wash. 2018) ; United States v. Lopez-Urgel , No. 1:18-CR-310-RP, 2018 WL 5984845 (W.D. Tex. Nov. 14, 2018) ; United States v. Aifredo-Valladares , No. 1:17-CR-156-SS, ECF No. 44 (W.D. Tex. Oct. 30, 2018); United States v. Pedroza-Rocha , No. EP-18-CR-1286-DB, ECF No. 53 (W.D. Tex. Sept. 21, 2018); United States v. Cruz-Jimenez , No. A-17-CR-00063, 2018 WL 5779491 (W.D. Tex. Nov. 2, 2018) ; United States v. Ortiz , No. 3:18-CR-00071-RWG, 347 F.Supp.3d 402, 2018 WL 6012390 (D.N.D. Nov. 7, 2018). Even some courts that have ultimately denied similar motions to dismiss have agreed Pereira requires NTAs to include date-and-time information to vest jurisdiction in the immigration court. See, e.g., United States v. Zapata-Cortinas , No. 18-CR-343-OLG, ECF No. 43, 2018 WL 6061076 (W.D. Tex. Nov. 20, 2018) ; United States v. Mendoza-Sanchez , No. 17-cr-189-JD, 2018 WL 5816346, at *2 (D.N.H. Nov. 5, 2018) ; United States v. Santos Larios-Ajualat , No. 18-10076-JWB, 2018 WL 5013522, at *4 (D. Kan. Oct. 15, 2018) ; United States v. Lira-Ramirez , No. 18-10102-JWB, 2018 WL 5013523, at *4 (D. Kan. Oct. 15, 2018).
The government argues against this conclusion, asserting that an NTA served on the noncitizen pursuant to 8 U.S.C. § 1229(a) and an NTA conferring jurisdiction on the immigration court under DOJ regulations are two different documents with separate substantive requirements. Resp. 5. The Court disagrees. Rather, there are several reasons to conclude that the NTA defined in § 1229 is the same NTA that vests jurisdiction. To begin, the regulations setting the jurisdiction of the immigration court cite 8 U.S.C. § 1229 as their statutory authority. See 8 C.F.R. §§ 1003.13, 1003.14(a). In addition, the statute and these regulations all pertain to the initiation of removal proceedings and use the same term: "notice of hearing." Compare 8 U.S.C. § 1229(a)with 8 C.F.R. §§ 1003.13, 1003.14(b) ; see also Pereira , 138 S.Ct. at 2128 (Alito, J., dissenting) (recognizing that NTAs under § 1229(a)"serve primarily as a charging document"). Moreover, the regulations themselves require that the NTA filed with the immigration court first be served upon the noncitizen. See 8 C.F.R. § 1003.14(a) ("The charging document must include a certificate showing service on the [noncitizen]."). These parallels among the statute and regulations demonstrate the singularity of the NTA, whether it be served upon the noncitizen or filed with the immigration court.
The government raises additional arguments against the straightforward application of Pereira and the plain text of 8 U.S.C. § 1229(a) in the context of the immigration court's jurisdiction. The Court addresses each in turn.
The government argues that Pereira must be limited to the context of the "stop-time rule." Resp. 10. Specifically, the *728 government suggests that the Court in Pereira considered only the "narrow issue" of whether an NTA without date-and-time information triggers the stop-time rule under 8 U.S.C. § 1229b. Id. While the question presented in Pereira might have been narrow, the Court's holding, that a putative NTA without date-and-time information "is not a 'notice to appear under section 1229(a),' " is sufficiently broad to include this case. See Pereira , 138 S.Ct. at 2113-14.
Certainly, the Pereira Court did not confront a question of the IJ's jurisdiction over removal proceedings, and so it did not address that precise issue. Yet, the Court did interpret the same statute at issue in this case and decided it "unambiguously" requires a valid NTA to provide the date and time of the noncitizen's removal hearing. Pereira , 138 S.Ct. at 2110 (citing 8 U.S.C. § 1229(a) ). To hold otherwise here, and ignore the plain language of the statute, would ride roughshod over the reasoning of Pereira . And, because a valid NTA also vests jurisdiction in the immigration court, Pereira 's holding has direct implications in this case. See 8 C.F.R. §§ 1003.13, 1003.14(a). This conclusion is bolstered by the Pereira Court's broader discussion of its holding outside the narrow confines of the stop-time rule. See, e.g., Pereira , 138 S.Ct. at 2114-15 (discussing the need for the NTA to provide date-and-time information to give practical effect to 8 U.S.C. § 1229(b)(1), which mandates that a hearing be scheduled at least ten days after serving the NTA to allow the noncitizen "the opportunity to secure counsel"); id. at 2216 ("[W]hen the term 'notice to appear' is used elsewhere in the statutory section, including as a trigger for the stop-time rule, it carries with it the substantive time-and-place criteria required by § 1229(a)."). These are strong reasons that the holding of Pereira applies in this context.
The government further contends that the NTA served on Sandoval-Cordero provided the IJ with jurisdiction because it complied with the regulatory definition of an NTA found in 8 C.F.R. § 1003.15(b). Resp. 7-8. The Court is unpersuaded. After Pereira , there is reason to conclude that § 1003.15(b) is ultra vires -that is, by following the regulation, the immigration court acts outside the bounds of its statutory authority. See City of Arlington, Tex. v. F.C.C. , 569 U.S. 290, 297, 133 S.Ct. 1863, 185 L.Ed.2d 941 (2013). Regulation § 1003.15(b) cites 8 U.S.C. § 1229 as its statutory authority. See 8 C.F.R. § 1003.15(b). Like § 1229(a), the regulation details the information that must be included in an NTA, such as the nature of the proceedings against the noncitizen, the legal authority under which the proceedings are conducted, and the acts or conduct alleged to be in violation of law. Id. Yet, missing from this list is the date and time of the noncitizen's removal hearing, which is required by 8 U.S.C. § 1229(a).
This inconsistency apparently arose because the DOJ promulgated its regulation before 1996, when Congress codified the statutory definition of an NTA in 8 U.S.C. § 1229(a). Congress, in enacting § 1229(a), adopted almost verbatim the previous definition of an "order to show cause"-the charging document formerly used in deportation proceedings[3] -but added a time-and-place requirement for the NTA. Compare 8 U.S.C. § 1252b(a)(1) (1994) (defining the contents of an order to show cause) with 8 U.S.C. § 1229(a). And because 8 C.F.R. § 1003.15(b) predates this statutory NTA definition, see 57 FR 11571 (Apr. 6, 1992), it reflects the information *729 previously required for orders to show cause. While DOJ has seemingly failed to update its regulation to match § 1229(a), this is no reason to ignore the "clear text" of § 1229(a). Indeed the Supreme Court in Pereira declined to apply Chevron deference to a related regulation because "Congress has supplied a clear and unambiguous answer to the interpretative question at hand." 138 S.Ct. at 2113. And, as Justice Kennedy explained in his concurrence, "an agency's interpretation of the statutory provisions that concern the scope of its own authority" or "jurisdiction" should be accorded little deference. Id. at 2120-21 (Kennedy, J., concurring); see also United States v. Haggar Apparel Co. , 526 U.S. 380, 392, 119 S.Ct. 1392, 143 L.Ed.2d 480 (1999) (holding that when "the regulation is inconsistent with the statutory language ... the regulation will not control").[4]
Finally, the government argues that any defect in Sandoval-Cordero's NTA was "cured" by the subsequently served Notice of Hearing, which supplied the missing date-and-time information. Resp. 14. To support this argument, the government cites the Fifth Circuit's opinion in Gomez-Palacios v. Holder , 560 F.3d 354, 359 (5th Cir. 2009). Id. The government suggests Gomez-Palacios stands for the proposition that a later-served Notice of Hearing may provide the IJ with jurisdiction over a removal hearing. Id.
To begin, the Pereira Court rejected a two-step approach like that advanced by the government. The Pereira majority dismissed the dissent's argument that " § 1229(a)(1)'s language can be understood to define what makes a notice to appear complete ." Pereira , 138 S.Ct. at 2126 (Alito, J., dissenting). In the dissent's view, a defective NTA could still be a "notice to appear under section 1229(a)" even if lacking date-and-time information. Id. Unpersuaded, the Pereira majority reasoned that § 1229(a)"does not say a 'notice to appear' is 'complete' when it specifies the time and place of the removal proceedings." Id. at 2116. Rather, the statute "defines a 'notice to appear' as a 'written notice' that 'specif[ies],' at a minimum, the time and place of the removal proceedings." Id. (quoting 8 U.S.C. § 1229(a)(1)(G)(i) ). Likewise, a Notice of Hearing-an altogether different document-containing information missing from an NTA does nothing to "complete" or "cure" the defective NTA. Id.
The government's argument fails for two additional reasons: it both ignores the regulatory framework at issue in this case and misreads the Fifth Circuit's opinion in Gomez-Palacios. First, DOJ regulations are clear about which documents may serve as "charging documents" that vest jurisdiction with the immigration court. 8 C.F.R. § 1003.13. "Charging documents" consist of either a "Notice to Appear, a Notice of Referral to Immigration Judge, [or] a Notice of Intention to Rescind and Request for Hearing by Alien." Id. Conspicuously absent from this list is a Notice of Hearing. Thus, a Notice of Hearing is not a valid charging document, and it does not provide the IJ with jurisdiction over removal proceedings. See Martinez-Garcia , 366 F.3d at 735.
Second, the Fifth Circuit's opinion in Gomez-Palacios did not address the question of whether a Notice of Hearing providing *730 date-and-time information can "cure" a defective NTA for jurisdictional purposes. See Gomez-Palacios , 560 F.3d at 358. Rather, the case centered on the question of whether this two-step process may provide the noncitizen with "notice " of the hearing such that the IJ could order him removed in absentia. Id. (emphasis added). Nowhere in the Gomez-Palacios opinion is the word "jurisdiction" mentioned, nor are the jurisdictional regulations cited. See generally id. Because that case did not purport to answer the question presented in this case, its holding does not apply.
Accordingly, this Court will not depart from the statute's clear text. Section 1229(a)"unambiguously" requires an NTA to provide the date and time of the noncitizen's removal proceeding. Pereira , 138 S.Ct. at 2110. Without that "essential" information, a putative NTA is defective. See id. at 2114-15. And because a defective NTA is not a valid charging document, it fails to provide the immigration court with jurisdiction. See DeLeon-Holguin v. Ashcroft , 253 F.3d 811, 815 (5th Cir. 2001) ("[R]emoval proceedings commence when [DHS] files the appropriate charging document with the immigration court.").
Moreover, any action by an immigration court without jurisdiction is void. Puc-Ruiz v. Holder , 629 F.3d 771, 782 (8th Cir. 2010) ("When the IJ lacks jurisdiction, his decisions are nullities."). In an analogous context, several circuit courts, including the Fifth, have held that when the Board of Immigration Appeals issues a removal order without statutory or regulatory authority, the order is rendered "a legal nullity." Noriega-Lopez v. Ashcroft , 335 F.3d 874, 884-85 (9th Cir. 2003) ; James v. Gonzales , 464 F.3d 505, 513 (5th Cir. 2006) (adopting the reasoning in Noriega-Lopez ); see also Matter of Reitnauer , 152 F.3d 341, 344 n.12 (5th Cir. 1998) ("It is true that (1) jurisdictional defects render a judgment void, and (2) void judgments are subject to collateral attack."). Thus, the defective NTA at issue in this case failed to vest the IJ with jurisdiction over Sandoval-Cordero's removal proceedings. Consequently, the IJ's 2017 order that led to Sandoval-Cordero's removal is "a legal nullity." Noriega-Lopez , 335 F.3d at 884-85 ; James , 464 F.3d at 513 ; Puc-Ruiz , 629 F.3d at 782.
B. Although the IJ Lacked Jurisdiction to Order Sandoval-Cordero Removed in 2017, Sandoval-Cordero Must Satisfy 8 U.S.C. § 1326(d) to Collaterally Attack the Removal Order
Sandoval-Cordero contends that because the current prosecution rests upon an invalid removal order, he is not required to meet the requirements in 8 U.S.C. § 1326(d) to collaterally attack that order. This argument finds support in recent district court orders granting motions to dismiss § 1326 indictments after Pereira . See, e.g., Pedroza-Rocha , EP-18-CR-1286-DB, ECF No. 53 at 9 (holding that a "void removal means [the defendant] was not 'removed' as a matter of law" and "the Government cannot satisfy the plain language of § 1326, which applies only to noncitizens who reenter the United States after having been 'denied admission, excluded, deported, or removed.' "); Ortiz , 2018 WL 6012390, at *7 ("Defendant need not satisfy section 1326(d)'s strict requirements because the Immigration Judge lacked jurisdiction from the outset."). However, Sandoval-Cordero's argument falters in light of the text of § 1326(d) and Supreme Court precedent.
The Supreme Court has rejected the argument that only a "lawful" removal may support a § 1326 prosecution. Mendoza-Lopez , 481 U.S. at 833, 107 S.Ct. 2148. Following this, several courts of appeals *731 have held that the "lawfulness" or "validity" of the underlying removal order is not an element the government must prove to convict under 8 U.S.C. § 1326. See, e.g., United States v. Earle , 488 F.3d 537, 547 (1st Cir. 2007) ; United States v. Paredes-Batista , 140 F.3d 367, 376 (2d Cir. 1998) ; United States v. Alvarado-Delgado , 98 F.3d 492, 493 (9th Cir. 1996) (en banc); United States v. Torres-Sanchez , 68 F.3d 227, 229 (8th Cir. 1995). And § 1326(d)'s categorical language indicates a defendant must establish its elements even if the prior removal order is void for jurisdictional defects. 8 U.S.C. § 1326(d) ("In a criminal proceeding under this section, an alien may not challenge the validity of the deportation order ... unless the alien demonstrates [ § 1326(d)'s three requirements]") (emphasis added). Accordingly, despite the Court's conclusion that Sandoval-Cordero's 2017 removal order was invalid, he still must satisfy § 1326(d) for the Court to dismiss the indictment. See Benitez-Villafuerte , 186 F.3d at 658 (explaining that if the defendant cannot meet the requirements to challenge a removal order, the order "may be used to establish an element of a criminal offence") (citation omitted).
C. Sandoval-Cordero Has Not Satisfied 8 U.S.C. § 1326(d)
To collaterally attack a removal order in a subsequent § 1326 prosecution, the defendant must demonstrate that: "(1) [he or she] exhausted any administrative remedies that may have been available to seek relief against the order; (2) the deportation proceedings at which the order was issued improperly deprived the [him or her] of the opportunity for judicial review; and (3) the entry of the order was fundamentally unfair." 8 U.S.C. § 1326(d). The defendant must satisfy all three requirements. Cordova-Soto , 804 F.3d at 719. The Fifth Circuit also requires defendants to establish "actual prejudice" to succeed in a collateral attack. Benitez-Villafuerte , 186 F.3d at 658. This means demonstrating "a reasonable likelihood that but for the errors complained of the defendant would not have been [removed]." Id. at 659.
Here, Sandoval-Cordero has not shown that he "exhausted any administrative remedies" available to seek relief against the IJ's removal order. See 8 U.S.C. § 1326(d)(1). DOJ regulations permit a noncitizen to appeal an IJ's removal order to the Board of Immigration Appeals. 8 C.F.R. § 1003.3. Rather than doing so, Sandoval-Cordero waived his right to appeal the IJ's decision. Mot. Ex. C. And Sandoval-Cordero does not suggest that the IJ failed to notify him of this opportunity for appeal, as required by 8 C.F.R. § 1003.3(a)(1), or that his appellate waiver was somehow "not considered or intelligent." See Mendoza-Lopez , 481 U.S. at 840, 107 S.Ct. 2148. By waiving his right to appeal to the Board of Immigration Appeals, Sandoval-Cordova did not exhaust his administrative remedies. See Cordova-Soto , 804 F.3d at 724 ; United States v. Chavez-Alonso , 431 F.3d 726, 728 (10th Cir. 2005) (holding that one who "knowingly waives the right to appeal an immigration judge's order ... fails to exhaust administrative remedies under § 1326(d)(1)").
Sandoval-Cordero also has not shown that the underlying removal proceedings "improperly deprived [him] of the opportunity for judicial review." See 8 U.S.C. § 1326(d)(2). A noncitizen may generally seek judicial review of an IJ's removal order in the court of appeals for the circuit in which the IJ sits. 8 U.S.C. § 1252 ; see also Diaz v. Sessions , 894 F.3d 222, 226 (5th Cir. 2018) ("We generally have jurisdiction to review orders of removal ...."). The court of appeals has exclusive jurisdiction to enter a judgment "determining the validity of, and enjoining, setting aside, or *732 suspending ... the order of the agency." 28 U.S.C. § 2349(a) ; accord Vidal v. Gonzales , 491 F.3d 250, 252 (5th Cir. 2007).
Despite the existence of this statutory framework, courts have found that removal proceedings might nevertheless improperly deny the opportunity for judicial review. In Mendoza-Lopez , for example, the noncitizens were denied judicial review because the IJ "permitted waivers of the right to appeal that were not the result of considered judgments ... and failed to advise [them] properly of their eligibility to apply for suspension of deportation." Mendoza-Lopez , 481 U.S. at 840, 107 S.Ct. 2148. In addition, a defendant may establish the first two parts of § 1326(d) by showing "he was denied judicial review of his removal proceeding in violation of due process" or that "immigration officials in the underlying removal proceeding violated a regulation designed to protect an alien's right to judicial review." United States v. Gomez , 757 F.3d 885, 892 (9th Cir. 2014).
Here, however, Sandoval-Cordero does not argue that he was somehow deprived of the opportunity for judicial review. He instead contends that the IJ's lack of jurisdiction excuses him from showing such a deprivation, as well as excusing his obligation to exhaust administrative remedies. Mot. 3-4. This argument runs counter to the express limitations adopted by Congress in § 1326(d) and the Mendoza-Lopez Court's explanation of when due process requires collateral review in a § 1326 prosecution. "The standard is not whether the deportation order was valid, but whether Defendant was deprived of the opportunity to have it reviewed by an Article III court." Lira-Ramirez , 2018 WL 5013523, at *5. Sandoval-Cordero waived his right to appeal the IJ's removal order. Mot. Ex. C. And because he has not suggested that this waiver was somehow invalid, he has not satisfied the second requirement of § 1326(d). See Cordova-Soto , 804 F.3d at 724 ; United States v. Garza-Sanchez , 217 F.3d 806, 808 (9th Cir. 2000) ("[A] valid waiver of the right to appeal a deportation order precludes a later collateral attack.").
Sandoval-Cordero also must show entry of his 2017 removal order was "fundamentally unfair," see 8 U.S.C. § 1326(d)(3), and that "there was a reasonable likelihood that but for the errors complained of the defendant would not have been [removed]," Benitez-Villafuerte , 186 F.3d at 659. However, because Sandoval-Cordero has not satisfied the first two parts of § 1326(d), the Court need not reach these issues. See Cordova-Soto , 804 F.3d at 724 ; Mendoza-Mata , 322 F.3d at 832. Accordingly, because Sandoval-Cordero has not met the requirements to collaterally attack his 2017 removal order, his Motion to Dismiss the Indictment must be denied. See Cordova-Soto , 804 F.3d at 724.
III. CONCLUSION
Although the IJ lacked jurisdiction to order Sandoval-Cordero removed from this country in 2017, Sandoval-Cordero has not satisfied the requirements to challenge that order in this case. See 8 U.S.C. § 1326(d). Accordingly, his Motion to Dismiss the Indictment, ECF No. 39, is DENIED.
SO ORDERED.
SIGNED on this 29th day of November, 2018.

In Mendoza-Lopez , the Court determined that the defendants' underlying removal proceedings violated due process because the IJ had accepted their invalid waivers of the right to appeal and failed to advise them of their eligibility to apply for relief from removal. United States v. Mendoza-Lopez , 481 U.S. 828, 840, 107 S.Ct. 2148, 95 L.Ed.2d 772 (1987). And because those procedural defects burdened the noncitizens' ability to obtain judicial review of their resulting removal orders, the Court concluded that the defendants could collaterally attack those removal orders. Id. at 837-40, 107 S.Ct. 2148.

Between the time the Supreme Court issued its opinion in Mendoza-Lopez and Congress enacted 8 U.S.C. § 1326(d), the Fifth Circuit articulated its own test for a defendant to collaterally attack an underlying removal order. United States v. Estrada-Trochez , 66 F.3d 733, 735 (5th Cir. 1995). Although the Fifth Circuit's formulation differed from § 1326(d), the court has since explained that Congress "effectively codified" its test in the statute. United States v. Lopez-Vasquez , 227 F.3d 476, 483 n.13 (5th Cir. 2000). Accordingly, this Court will apply only the test provided in § 1326(d).

Congress also changed the name of the document from "order to show cause" to "notice to appear." Compare 8 U.S.C. § 1252b(a)(1) (1994)with 8 U.S.C. § 1229(a).

The Pereira Court itself rejected the argument that an NTA's time-and-place information could be optional. There, the government argued that DOJ regulations required an NTA to include only "the time, place and date of the initial removal hearing, where practicable. " Pereira , 138 S.Ct. at 2111 (citing 8 C.F.R. § 1003.18(b) ) (emphasis added). The Supreme Court disagreed, explaining this regulation did not justify "departing from the statute's clear text" requiring date-and-time information in every NTA. Id. at 2118.